## Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Austin's Admr.

(Decided January 24, 1911.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Trial—Objection to Trial Judge—When to be Made.—It is a fundamental rule of the common law that an objection to the trial judge must be made at the threshold, and if not so made it is waived.

2. Action for Injury in Foreign State—Suit in this State—Law Governing.—Where injury to one in crossing a railroad track occurred in Indiana, the law of the state where the injury occurred must control although the suit is brought in this state.

3. Trial in This State—Law of Foreign State—Judicial Knowledge. —The courts of this State do not take judicial knowledge of the law of another State. What is the law of another State is a fact to be shown by the evidence, and this court must decide the case upon the record on the subject.

4. Same—Law of Foreign State—Construction for the Court—Certain Exception.—Where a witness is introduced in a case pending in this State and states that certain opinions of the Supreme Court of another State establish a certain proposition, as the proper construction of a writing, is a question for the court, not for the jury, the court trying the case must read these decisions and determine their effect. But it cannot disregard the conclusion of the witness when it has not before it the facts upon which the witness bases his conclusion.

5.   Railroads—Negligence in Running Train—Contributory Negligence of Party Injured.—It was negligence on the part of the railroad company to run its train over the crossing without proper signal of its approach, in a blinding storm of dust, when light was impossible, but under the law of Indiana, as shown by the evidence in the record, the plaintiff was guilty of contributory negligence in going on the crossing as he did under the circumstances, and he cannot recover.

CHAS. H. GIBSON, for appellant.

O'DOHERTY & YONTS, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Henry C. Austin was struck by a train of the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and sustained serious injuries to recover for which he brought this suit. On the first trial of the case the jury disagreed; on the second trial they found a verdict for the plaintiff for $5,000. The court entered judgment on the verdict and the railway company appeals.

The case was tried before the Hon. Emmett Field, as judge of the circuit court. After the trial of the case and before the motion for new trial was disposed of he died. After his death, his successor, Judge Batson, overruled the motion for new trial, and gave time for the filing of the bill of exceptions. Shortly thereafter Judge Batson was succeeded by the Hon. W. H. Field, who within the time allowed, approved, signed and filed the bill of exceptions. Appellee has entered a motion in this court to strike out the bill of exceptions on the ground that Judge W. H. Field who did not preside at the trial, had no authority to sign or approve it. Section 337. subsection 5 of the Code of Practice provides:

"If the judge who presided at the trial does not preside when a motion for a new trial is overruled, the bill of exceptions may be certified by bystanders, and be controverted and maintained pursuant to the provisions of subsections 3 and 4 of this section."

It is insisted for the appellee that a bill of exceptions unless certified by bystanders, cannot be considered. On the other hand it is insisted for appellant that appellee by counsel, though present when Judge Field approved and filed the bill of exceptions, failed to make any objection to his capacity to act, misleading them into supposing that they consented to his acting. On the motion to strike out the bill of exceptions, the affidavit of Judge Field and the attorneys

on both sides, who attended to the matter, have been filed. These affidavits show that the bill was tendered on January 29, and was then withdrawn by appellee's counsel for examination, no objection being made to Judge Field's acting; and that on February 7, upon the direction of the court, appellee's counsel produced the bill of exceptions in court, and objected to it on the ground that it did not contain certain instructions which had been offered on the trial. These instructions were added to the bill, and no further suggestion being made, and their being no objection to the court's acting, the court approved and signed the bill as thus corrected, and ordered it filed; the counsel for appellees informing the court that he wished to reserve an exception, the order was so entered, no reason being assigned for reserving the exception. The circuit judge signed the bill upon the idea that it was conceded to be a correct bill and without understanding that either party wished a bystander's bill to be prepared. It is also apparent from the record that the attorneys for the appellee had in their minds that it was necessary for the appellant to file a bystander's bill, and that they reserved their exception to the bill with the view of raising this question, but concealed this from the court and from the attorneys on the other side.

In Hayden v. Orthkeiss, 83 Ky., 396, a bill was tendered before a special judge who refused to sign it on the ground that he had not presided at the trial, but he ordered it made part of the record. It was held that the bill was not complete, and could not be considered. In Southern R. R. Co. v. Lewis, 19 R., 570, a bill was signed by a judge who had not presided at the trial, and it was held insufficient, but in that case no question was raised as to the court and the appellant being misled. In Hill v. Ins. Co., 120 Ky., 190, time was given to the next term to file a bill of exceptions, and this under a rule of the court had been acted upon by the bar as meaning the next civil term. The bill having been filed at the next civil term by acquiescence of all parties it was held that it could not be stricken out. The rule followed in that case was approved in Vertress v. Head, 138 Ky., 83, and controls here.

Appellant's counsel knew that under the Code they were entitled to have a bill of exceptions certified by bystanders, if they desired, but this right they could waive, and they could permit a bill filed, certified by the presiding judge. As the evidence had been taken by the

stenographer, all that there was to do was to include the instructions given on the trial, and the exceptions reserved, and there was little need to file a bystander's bill for this purpose when the attorneys agreed on the facts. It is a fundamental rule of the common law that an objection to the judge must be made at the threshold, and if not so made is waived. The judge and the attorneys for the appellant could but have understood from what occurred that the appellee was consenting that the bill of exceptions should be made up as it was. Appellant's attorneys must have known that they were under this impression; it was incumbent on them to make their objection to the judge's acting in the matter, in such a manner as to give notice of the ground of objection. Failing to do this they misled the judge and the attorneys for the appellant, and the objection must now be deemed waived. The motion to strike out the bill of exceptions is overruled.

Henry C. Austin lived in Jeffersonville, Indiana, on Sixth street, about 175 feet from its intersection with Illinois avenue which it crosses at right angles. The tracks of the railroad company run east and west along Illinois avenue. As he was going from home after dinner on April 22, he was struck by a train at the railroad crossing. The train was going west; it was to stop about one square ahead; and had shut off steam. It was running at the usual speed, and according to the testimony for him no signal of its approach to the crossing was given. His own statement as to how the injury occurred put in a narrative form is as follows:

"I was walking at an ordinary gait, was looking out ahead, as near as I remember looking south. I could see on a clear day the railroad track some distance beyond the street line of Sixth street as I approached the track. I don't think I turned my face and looked east. Just as I reached Sixth street a whirlwind of dust came. It was blowing dust all the time but just as I was going into the street it started like a whirlwind between 25 and 35 feet from the railroad track. I could not see any train or anything else, but kept on, made no stop. Just as I put my left foot over the rail, the train hit me. This was the first that I knew of the train. I did not know I had been struck by a train until the accident was over."

On cross-examination, he said:

"To the best of my knowledge, I was looking straight ahead south. The dust was blowing all the time after I left home, but the whirlwind came just as I was going

into Illinois avenue, and that rendered it impossible for me to see any train or anything else then."

These questions and answers also occur:

"Q. Now what, if any, precaution did you take to see whether a train was coming down from Pearl street along that track or to see whether a train was coming?"

"A. Well, I just walked on across the street, I am sure I could have heard the train if there had been a bell a ringing."

"Q. That is when the bell rings you usually hear it?"

"A. Yes, sir, I always hear it when it rings."

"Q. Did you use any extra effort to listen for the bell to see if it was ringing?"

"A. I always do that. If a man goes across a railroad track he is liable to have his mind some ways on it."

Some rock had been placed in Illinois street which had been ground up by the wagons running over it, and this dust being gathered up by the whirlwind, made a dark bluish cloud. A bystander who saw Austin approaching the track testified that he had his head ducked down against the wind, and was holding his hat on with his hand. The same cause which prevented him from seeing the train prevented the train men from seeing him. The train left the station near by every half hour. Austin knew the time of the train and knew that the twelve o'clock bell had struck just as he left home. He so testified.

The accident having occurred in Indiana, the defendant pleaded the law of Indiana in bar of a recovery, and the law of the State where the injury occurred must control, although the suit is brought in this State. The law of Indiana is thus stated by an expert witness introduced on behalf of appellant:

"Q. Please state what under the said common law of the State of Indiana in force at the date mentioned, were the duties of a traveler on foot approaching a public crossing over a steam railroad track, and especially what precaution, if any, the said common law required him to take for his own safety and protection as against trains passing over said crossing?"

"A. It was the duty of such traveler, in approaching the railroad track, to look and listen along the railroad track in both directions to discover whether a train was approaching on such track. In exceptional cases, it was his further duty to stop and listen and look for the purpose mentioned."

"Q. State whether or not under the common law of the State of Indiana, it was or was not, such as to affect the right of the injured party to recover in the event of receiving an injury at a railroad crossing, where such parties failed, before crossing the track, to listen and look in both directions? If so, please state what such effect was?"

"A. It did affect it. The failure to so look and listen amounted to contributory negligence which would bar the right of the injured party, or his personal representatives to recover for any injury arising from collision with the railroad train."

"Q. You have reference to exceptional circumstances under which the common law of Indiana, at the time mentioned, also required a traveler approaching the track to stop as well as to look and listen. Please state as to whether or not a sudden or violent gust of wind raising such quantities of dust at the place of crossing as to render it difficult if not impossible to see an approaching train was or was not such an exceptional circumstance as, under the common law of Indiana, made it a duty of the traveler on foot to stop as well as to look and listen before attempting to cross the track?"

"A. It was."

"Q. Under the said common law, at what point was it the duty of the traveler on foot to so stop, look and listen?"

"A. It was his duty to select the most advantageous point in order to render his senses of sight and hearing availing."

This is all the testimony in the record on the subject except that of one witness introduced by the appellee who does not contradict the above, and whose testimony taken as a whole, shows that he does not know what the law of Indiana is on the subject.

It is manifest from Austin's own evidence that there was a gust of wind which raised such a dust as rendered it impossible for him to see the approaching train, and that in this blinding dust with his head tucked down to keep the dust out of his eyes, and his head bent in the direction of the wind, he walked up to the railroad track without stopping, listening and looking in the direction of the train. Unless he stopped, looking would have been useless as he could not see in the dust; and just then the whirlwind must have had no little effect upon sounds. It is also manifest that on the testimony above quoted, he could not recover under the law of Indiana

for an injury thus received. We, therefore, conclude that the court under the evidence should have instructed the jury peremptorily to find for the defendant.

There was no variance between the defendant's pleading and the proof. In the plea it was averred that under the common law of Indiana, it was the duty of the plaintiff's intestate to stop, look and listen for the approach of the train before going upon the railroad track; that the intestate failed to stop, look and listen before going upon the track at the time he was injured, and but for this the injury would not have occurred. Under the evidence as to the law of Indiana it is shown that under the circumstances surrounding the intestate, it was his duty to stop, look and listen. When the defendant showed that the duty to stop, look and listen devolved under the law of Indiana on the intestate, under the circumstances in which he was placed, it sustained its plea. It was not necessary for the defendant to allege or show what the law of Indiana was under other circumstances or as applicable to other cases. The question was what was the law of Indiana as applicable to the intestate in approaching the crossing in question at the time he was injured?

We are referred by counsel to certain text books and decisions which are relied on as conflicting with the rule shown to be in force in Indiana, and we are also cited to certain opinions of the Supreme Court of Indiana, which it is insisted are also inconsistent with this rule. But we cannot go into these matters. We do not take judicial knowledge of the law of another State. What is the law of another State, is a fact to be shown by evidence, and we must decide the case upon the evidence in the record on the subject. (Union Central Life Ins. Co. v. Dukes, 132 Ky., 370; L. & N. R. R. Co. v. Smith, 135 Ky. 462; Yellow Poplar Lumber Co. v. Ford, 141 Ky., 5.) If the Supreme Court of Indiana in its later opinions has relaxed the rule laid down in its earlier opinions, appellee should introduce evidence to show this. A court of this State cannot go through all the decisions of the Supreme Court of another State and determine for itself what the law of that State is. When a witness is introduced in a case pending here, and states that certain opinions of the Supreme Court of another State establish a certain proposition, as the proper construction of a writing is a question for the court, not the jury, the court trying the case may read these decisions itself and determine their effect. But it cannot disregard the

conclusion of the witness when it has not before it the facts upon which the witness bases his conclusion. When a witness testifies to the law of another State, he may be required on cross-examination to state on what decisions of the Supreme Court of the State or other authority he bases his judgment, and to file with his deposition copies of the opinion or authority relied on. When the witness refers to the opinions of the Supreme Court of another State as the basis for his conclusion, and files a copy of the opinions with the deposition, or where the books are accessible to the trial court, and by consent of parties he gives the style of the case and page of the book where it is found, then the court trying the case may read the opinion or opinions so designated, and see if they support the conclusion of the witness. Where the testimony is conflicting as to what the law of another State is, and the witnesses reaching conflicting conclusions, give the opinions of the State Court on which their conclusions are based, a court of this State may, in an action pending here, read the opinions so designated for itself, and determine what is the proper construction to be placed upon them. In such an event the court should instruct the jury as to the law of the case just as he would instruct the jury as to the law of the case when governed by the laws of this State. In other words, the court must then determine what the law of the other State is by reading the indicated opinions themselves, and tell the jury what is the law of the case. (2 Wharton Conflict of Laws, Sec. 773.)

The plaintiff's testimony that the bell was not ringing and that no signal of the approach of the train to the crossing was given, was supported by the testimony of other witnesses. The defendant proved by four witnesses that the bell was ringing. The conflict in the evidence as to whether the bell was ringing might be accounted for largely by the whirlwind, as sounds follow the wind, but for another fact that appears. The defendant's proof shows that the bell did not ring automatically. The fireman and engineer both testify that they were each in position looking out ahead, one on the right side of the cab and one on the left, and that the fireman was ringing the bell by pulling the rope. There was nobody else on the engine. The proof for the plaintiff is to the effect that the fireman was not in his position in the cab but was down on the floor at the side looking out. If he was in this position he could not have rung the bell, and if he was not ringing it the evidence

would indicate that it was not ringing at all. It was negligence on the part of the railroad company to run the train over the crossing without proper signal of its approach, especially in a blinding storm of dust, when sight was impossible; but under the law of Indiana as shown by the evidence in the record, Austin was guilty of contributory negligence in going on the crossing as he did under the circumstances, and cannot recover.

Judgment reversed and cause remanded for a new trial.