No. 18,977.

J. H. SPAETH, *Appellant*, v. WESLEY KOUNS, *Appellee.*

SYLLABUS BY THE COURT.

1. EXCHANGE OF PROPERTY—*Missouri Land—Abstract—Expert Evidence Showed Title to be Merchantable.* The testimony of a Missouri lawyer of fifteen years' experience and of a Missouri abstracter of titles of twenty years' experience, neither contradicted nor discredited, is sufficient to base a judgment that the title to a tract of Missouri land is merchantable and is vested in the record owner free and clear of incumbrances.

2. SAME—*Indefinite—Pleadings Alleging Defects in Title.* One who makes a bargain to trade real estate properties with another can not avoid his contract on the indefinite plea that the title of the other is "encumbered by liens and clouds so that the title was unsatisfactory, unmerchantable and defective," without pleading any specific defects, and without even adducing any evidence in support of such indefinite plea.

3. SAME—*Trial Court—May Not Disregard Competent Evidence.* It is not proper for the district court to disregard the evidence of witnesses competent to testify as to the sufficiency of a title to land in another state, and without either pleading or proof of the law of such other state, to pass judgment by an independent examination of the abstract.

SAME—*Judgment on Issue Not Raised by Pleadings.* It is not proper for the district court to give judgment on an issue not fairly raised by the pleadings.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed May 8, 1915. Reversed.

*C. W. Burch,* and *B. I. Litowich,* both of Salina, for the appellant.

*J. O. Wilson,* and *J. H. Wilson,* both of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff was the tenant of the defendant and both resided in Salina. They made a bargain whereby the plaintiff traded to defendant a

tract of Missouri land for the house he occupied in Salina. The conditions of the trade were that the parties should furnish to each other abstracts showing merchantable title to their respective properties.

The plaintiff submitted his abstract to defendant's lawyer as per defendant's instructions, and in time plaintiff's abstract and title were fixed up to meet this attorney's approval. Nevertheless the defendant repudiated the trade, and plaintiff brought suit for specific performance.

The defendant answered that plaintiff had failed to furnish an abstract showing good title to the Missouri property; that it was "encumbered by liens and clouds so that the title was unsatisfactory, unmerchantable and defective." Other issues were raised but are not for our consideration.

On the trial, two Missouri experts, a lawyer of fifteen years' experience and an abstracter of twenty years' experience, testified for the plaintiff. The lawyer gave his opinion that the abstract "showed a good merchantable and marketable title in [plaintiff] free and clear from all liens and incumbrances." The abstracter testified that the title was vested in plaintiff free and clear of incumbrances. There was no objection to this testimony, not even to the form of the questions, nor that the questions call for the conclusions of the witnesses. The only other evidence was the abstract itself, and the learned district court disregarded the evidence of the experts in Missouri law and studied the abstract independently, and made certain findings of fact and conclusions of law in favor of defendant and refused specific performance. From this judgment plaintiff appeals and contends: "(1) That the court erred in disregarding the testimony of experts. (2) That the abstract shows a merchantable title in the plaintiff. (3) That the defendant was estopped to complain of the abstract of title since it had been perfected to the complete satisfaction of his at-

21—95 KAN.

torney, under his directions." The first assignment of error is meritorious. The Missouri witnesses showed their competency to give expert testimony and their testimony was undisputed. Their evidence was given by deposition so their personal demeanor was not before the court. If they were ill-favored persons the court could not discover it from the typewritten depositions. We see no reason why their evidence should be disregarded. Counsel for appellee do not help us in this dilemma. How is the sufficiency of the title to a tract of land in another state or country to be established? By introducing all the statutes, all the decisions, all the court proceedings which at one time and another may have affected the title as it passed from father to son, by conveyance, by descent, by will or by forced sale? Such a mode of proof would sometimes be possible, but what an endless, bootless task it would be. On the other hand, how proper, precise and expeditious is the proof where the evidence is the testimony of reputable experts whose long years of study of the law of titles in the state where the land lies have qualified them to speak on that subject.

On this general proposition Wigmore says:

"Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed statements—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper." (2 Wigmore on Evidence, § 1230.)

In *Seventh Day Adventists v. Sanitarium*, 166 Mich. 504, 132 N. W. 94, is the following:

"The plaintiff further offered in evidence the deposition of W. H. Lynch, who testified that he was an advocate and resided in the village of Sweetsburg, district of Bedford, and province of Quebec, and that he had practised his profession continuously since October, 1899; that he was familiar with and knew the law and practice of the courts of the province of Quebec, Canada, in relation to the proof of wills, appointment of executors, and the settlement of estates under wills of deceased persons, . . . and that, under the practice and decisions of the courts of Lower Canada, an executor has authority to indorse promissory notes belonging to the estate when said notes are payable to the order of the deceased person, and to transfer the title and ownership of said notes by such indorsement. . . . The testimony of the Canadian advocate and the articles of the Code were sufficient proof of the authority of Mrs. Ruiter to act as executrix of her husband's will and of the fact that she became the absolute owner of the notes under the will, and could dispose of them as she saw fit." (pp. 508-510.)

The headnote to *Barker v. Brown*, 17 Ky. Law Rep. 1172, in 33 S. W. 833, reads:

"In garnishment proceedings it appeared that defendant had a life estate in land in Indiana on which tobacco, the proceeds of which were garnished, was raised. He leased the land for one-third of the tobacco as rent. Claimants, his children, were the remainder-men, and had mortgaged their interest to secure a debt of their father, and he agreed that they should have his share of the crop to apply on the debt. When the tenant stated that he was going to ship the tobacco to Kentucky, claimants, fearing that in that state it might be subjected to plaintiff's debt, paid the father the value of his interest in the crop. Plaintiff, defendant, and claimants lived in Indiana. *Held,* That on an issue whether the transaction between defendant and claimants was fraudulent, it was error to refuse to permit one learned in the statute law of Indiana to testify that under the laws of that state neither the tobacco nor its proceeds could be made liable to the payment of plaintiff's debt." (¶ 1.)

In *Consolidated Real Estate & Fire Ins. Co. v. Cashow,* 41 Md. 59, which involved a question of ownership of an insurance policy, it was said:

"We do not find any provision similar to those in our insolvent laws requiring such sales to be reported to and ratified by the Courts, and the purchaser's title is not made to depend upon such report and ratification. The receiver advertised on the 24th of July, and sold on the 7th of August. If we are to construe this statute as if it were an Act of our own Legislature, we should hold the receiver had complied with its requirement as to notice. If we are to determine whether his action would be so regarded by the Courts of New York, we must have recourse to the testimony of witnesses competent to testify on that subject. The evidence of the witness Lee, on this point, who swears that the sale was made 'after due public notice and advertisement *as required by the laws of the State of New York,*' settles the question, provided he is shown to be sufficiently an expert to give such testimony. He states that he is thirty-four years of age, and resides in New York City, and is by occupation a lawyer. This we regard as sufficient to enable him to testify as he has done." (p. 79.)

To the same effect were *Greasons v. Davis,* 9 Iowa, 219; *P., C., C. & St. L. Ry. Co. v. Austin's Admr.,* 141 Ky. 722, 133 S. W. 780; *Morgan Lumber Co. v. Williams,* 143 Ky. 115, 136 S. W. 131; *Dimpfel v. Wilson,* 107 Md. 329, 68 Atl. 561; *Mowry & another v. Chase,* 100 Mass. 79; *Genet v. President, etc., Delaware & H. Canal Co.,* 13 Misc. Rep. 409, 35 N. Y. Supp. 147; *Temple v. Pasquotank County,* 111 N. Car. 36, 15 S. E. 886; *Bollinger, Appellant, v. Gallagher et al.,* 163 Pa. St. 245, 29 Atl. 751, and *Barrows v. Downs & Co.,* 9 R. I. 446, 453.

We must hold that the evidence of the Missouri experts in this case was competent and as it was uncontradicted and no reason shown for disregarding it, it should have been controlling. No specific defects in plaintiff's title were pleaded. This was not fair to the plaintiff. He could not reasonably have anticipated the

quibbles which might be suggested by an oral criticism of his abstract of title in the course of an argument before the district court. Nor was it necessary for the court independently to raise issues by a scrutiny of the abstract which were not fairly raised by the pleadings. Litigants make their own issues. Courts may and sometimes do know of issues which might be projected into a lawsuit which would necessitate a different result from the one which is bound to flow from the issues which are raised or the procedure which is followed by the litigants.

If we might be permitted to put aside the issue and the proof tendered in this case and examine the abstract for ourselves, as was done by the district court, we would make no difficulty about plaintiff's title. The memorandum touching the registration of the patent is scant, but it is not proper to assume that it is defective. Moreover, the registration of the original homesteader's final receipt issued under section 2291 of the Revised Statutes of the United States (edition of 1875, 6 Fed. Stat. Ann. p. 292, 2 U. S. Comp. Stat. 1901, p. 1390) is itself sufficient. (Civ. Code, § 380; *Buckwalter v. School District*, 65 Kan. 603, 605, 70 Pac. 605.) No consequence need be attached to the vagrant deed executed in 1866 covering part of this land. This deed was executed and recorded twenty years before the homesteader's final receipt was issued, and consequently fifteen years before the land was entered as a government homestead. This deed would be worthless also to convey an after-acquired title, because as such it would be a contract in violation of federal law forbidding the homesteader to bargain away his homestead while the government held the title. (U. S. Rev. Stat., 1875, §§ 2288, 2291; *Mellison v. Allen*, 30 Kan. 382, 383, 2 Pac. 97,) The releases of the trust deeds to which the court objected would be valid if we were permitted to take judicial notice of what as lawyers we do know, that in Missouri there is a practice of presenting to the county recorder the instrument evi-

dencing the indebtedness itself as authority for its assignee to enter satisfaction of the indebtedness. On this point, however, we would be compelled to rely on the testimony of the Missouri experts, but since their testimony was neither contradicted nor discredited, we would hold these releases sufficient. Since the deed of 1866 could have conveyed nothing, the suit to quiet title against the heirs and assigns of the grantees under that title was unnecessary, and it can be of no consequence that the time has not yet elapsed to open up the judgment.

Where the court is short of evidence or information to determine the sufficiency of an act, fact or condition, the presumption is that it is sufficient and regular, not that it is insufficient and irregular. *Omnia rite esse acta.* The burden is on him who challenges the sufficiency.

In Maupin on Marketable Title to Real Estate, p. 708, it is said:

"The defect of title of which the purchaser complains must be of a substantial character; one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality, or value the property contracted for, constitute no ground upon which he may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient."

Again, it may be well said that the result below was unfair. Defendant directed plaintiff to submit his abstract to defendant's attorney. That attorney raised certain questions and made certain suggestions, to comply with all of which caused plaintiff expense and trouble. After compliance and after defendant's attorney approved plaintiff's abstract and title, defendant without reasonable excuse refused to carry out his bargain. He should be compelled to do so; and the case is reversed and remanded with instructions to the district court to render judgment for plaintiff.

BURCH, J., not sitting.