No. 19,401.

JOHN H. FELDHUT, *Appellee,* v. JOHN W. BRUMMITT and EMMA M. BRUMMITT, *Appellants.*

SYLLABUS BY THE COURT.

1. EXCHANGE OF REAL ESTATE—*Deeds in Escrow—Title Found Unmarketable—Rescission of Contract.* The plaintiff and defendant made a contract to exchange landed properties and named a real-estate agent as depositary to hold their respective deeds until their abstracts of title were approved. Notwithstanding the disapproval of defendant's title, the real-estate agent delivered plaintiff's deeds to defendant. In a suit for rescission and cancellation of plaintiff's deeds the issue turned largely upon the question whether a certain irrigation ditch and certain rights of way for irrigation ditches were incumbrances on the land. *Held,* (*a*) That the established irrigation ditch plainly observable on the property was not an incumbrance to the extent of being a breach of covenant. (*b*) Rights of way for irrigation ditches incumbering the record, indefinite in extent, not yet established nor open to view by inspection of the property, with the rights of the servient feeholder undetermined, do constitute incumbrances in breach of covenant.

2. SAME—*Findings of Fact and Conclusions of Law Approved.* General findings in favor of plaintiff and conclusion of law based thereon examined and approved.

Appeal from Clark district court; GORDON L. FINLEY, judge. Opinion filed July 10, 1915. Affirmed.

*R. W. Hoskinson,* and *Albert Hoskinson,* both of Garden City, for the appellants.

*W. W. Harvey,* of Ashland, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case arose over a land trade. The plaintiff, John H. Feldhut, who owned a ranch in Clark county, made a bargain to exchange it for a large tract of Finney county land belonging to the defendant, John W. Brummitt. The lands were to be free and clear of all incumbrances except specified mortgages. The real-estate agent who negotiated the deal was selected as the depositary of the deeds of both properties, the deeds to be delivered when the titles were approved. Feldhut employed a Garden City lawyer to examine the titles to the lands which he was to receive. This lawyer advised that the defendants' titles were unmarketable, and that the lands were incumbered with rights of way for railroads and irrigation ditches, a defective release of a mortgage, a pending attachment suit, and some unpaid taxes. Nevertheless, the real-estate agent, eager to secure his commissions, $800 from Feldhut and $1000 from Brummitt, delivered Feldhut's deeds covering the Clark county lands to Brummitt; and Feldhut brought this suit to rescind the contract and recover his instruments of title, and to cancel his conveyances to Brummitt. He also prayed in the alternative for damages.

From a decision granting a rescission in favor of plaintiff the defendants appeal. The principal contention here is whether an irrigation ditch and rights of way for irrigation ditches were incumbrances on the property. On this question there is a conflict of authority, but it may be conceded that in the Eastern states and among the older decisions the weight of authority would be in the affirmative. (39 Cyc. 1501, 1503.) Perhaps in the West, also, unless the question is affected by statute, the weight of authority is to the same effect. (Eriksen v. Whitescarver, [Colo. 1914] 142 Pac. 413; Wingard v. Copeland, 64 Wash. 214, 116 Pac. 670.) Where, however, the local conditions have called for the special exercise of legislation, as in Idaho where by acts of congress and state statutes a comprehensive irrigation system has been established, and public records of maps, rights, easements, ditches, etc., pertaining thereto are preserved, the rule is that irrigation ditches are not an incumbrance. (Schurger v. Moorman, 20 Idaho, 97, 117 Pac. 123, 36 L. R. A., n. s., 313.)

This court has considered a somewhat analogous question in *Ireton v. Thomas,* 84 Kan. 70, 113 Pac. 306, where it was held that a levee on the Neosho river established by law and maintained at public expense, and plainly open to the view of a purchaser, was not such an incumbrance as would constitute a breach of warranty in the sale of a tract of land upon which the levee was located.

We are urged to apply this doctrine to irrigation ditches in this state. If this is to be done, it must be on the basis that the irrigation ditch is plainly observable to inspection; and could not be placed on the basis chiefly argued by appellant. He would put it on the ground that irrigation is necessary in western Kansas, and that we should adopt the Idaho doctrine. We could not do that. The situation in our state is peculiar. In eastern Kansas the Idaho or arid states' doctrine would be entirely inappropriate; in central Kansas it would be of doubtful propriety; in the extreme parts of western Kansas it might do very well; but no court has power to divide this state, like all Gaul, into three parts, and impose a peculiar doctrine upon our western frontier.

(See, further, *Clark v. Allaman,* 71 Kan. 206, 230-237, 80 Pac. 571.)

But even applying the doctrine of *Ireton v. Thomas,* and granting that an irrigation ditch in plain view is not an incumbrance constituting a breach of covenant, the land in controversy was also incumbered by mere rights of way for irrigation ditches, and by conveyances of rights of way for irrigation ditches. These were not observable in a physical inspection of the property. They were indefinite in extent and duration. It was uncertain what if any rights the fee-holder would have to the water if these rights of way were established and the ditches constructed thereunder. Shall we say that these too were not incumbrances?

The matter was disposed of by the district court in the following general findings:

"In the case at bar, the plaintiff upon investigation would certainly have discovered the irrigation ditch and the railroad. While plaintiff can not rescind or complain because these incumbrances are upon the land, does there remain any uncertainty as to the title?

"The abstract shows a series of transfers of a right-of-way for an irrigation ditch. The first transfer is in 1890, and the last concerning

that right-of-way in 1906, when the Finney County Water Users Association acquired title.  Subsequent to this is a deed for a right of way for an irrigation ditch from the United States Irrigation Company made August 2, 1910, and recorded August 10, 1910.  This deed conveys a right-of-way in Kearny and Finney counties and across the land in controversy.

"The evidence seems to indicate that there is but one ditch on the land.  Undoubtedly this ditch is the one involved in the several transfers beginning in 1900 [1890].  The United States Irrigation Company then has either this ditch or a mere right-of-way.

"The defendant claims these transfers are what is termed merely 'stray deeds' and therefore not clouds on the title.  The deeds in question, however, are from corporations having the power of eminent domain.  They could acquire an interest by condemnation proceedings and possibly did so.  Possibly they have some rights based upon unrecorded deeds or more likely some rights based upon mere adverse possession.  They may, in fact, have no real interest either through failure to comply with the law, or abandonment.  The deeds may in fact be strays.  But a purchaser, promised a clear title, ought not to be compelled to clear the record of possible claims and interest to protect his title.  The duty should be transferred to the vendor and the abstract to show a clear title.

"Again, there is nothing to inform the purchaser as to possible and probable rights of either irrigation company to construct other ditches and laterals.

"Again, the purchaser is not advised as to any water rights that may pass with the title.  If he bought expecting to obtain water rights the abstracts fail to show he was entitled thereto.

"In general, the purchaser may be thrown into litigation to clear his title.

"The plaintiff had no personal knowledge either of the ditch or the railroad, before the contract was executed, but as these are visible to the eye, he can not be permitted to rescind for that reason.  For the other reasons stated the contract should be set aside, all papers returned and the parties placed in the same position as before the execution of the contract."

These general conclusions are undoubtedly correct.  Tried by the ordinary tests, the appellant's title was not marketable to the extent that he could compel specific performance.  (*McNutt v. Nellans,* 82 Kan. 424, 108 Pac. 834; *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998; *Linscott v. Moseman,* 84 Kan. 541, 114 Pac. 1088; *Spaeth v. Kouns,* 95 Kan. 320, 148 Pac. 651.)  In view of this, and keeping in mind that the surrender of the deeds by the real-estate agent was without authority and in plain violation of the terms constituting him the depositary of the contracting parties, this lawsuit is to be determined

exactly by the same principles of law as if it were an action
to compel specific performance; and since we can not discover
any reversible error in the district court's general findings, its
judgment must be affirmed.