White v. Immenschuh.

. No. 22,492.

W. E. WHITE, *Appellant,* v. JULIUS IMMENSCHUH, *Appellee.*

SYLLABUS BY THE COURT.

1. CONTRACTS—*Exchange of Real Property—Organization of Drainage District—When it Becomes an Encumbrance on Lands.* The organization of a drainage district does not constitute an encumbrance on the land in the district within the meaning of a contract for the exchange of real property; and the apportionment of assessments to pay for the improvements does not constitute such an encumbrance until the assessments have ripened into a tax, and the tax has become a lien on the land under the general tax laws of the state.

2. EXCHANGE OF LAND—*Memorandum Signed by Both Parties—Statute of Frauds.* A contract for the exchange of real property, specifying the terms on which the exchange shall be made, signed by both the parties thereto, does not conflict with the statute of frauds.

3. SAME—*Agent Acting for Both Parties.* A written contract for the exchange of real property cannot be avoided by showing that the agent who brought about the execution of the contract was the agent of both parties, when each party knew at the time that the agent was acting for the other.

4. SAME—*Rescission of Contract—Tender of Performance—Damages.* Where one of the parties to a contract for the exchange of real property notifies the other that he will not comply therewith, it is not necessary for the party thus notified to tender performance on his part before commencing an action to recover damages for the failure of the other party to perform the contract.

5. SAME—*Satisfactory Abstract of Title—Question of Fact—Demurrer to Evidence.* Where a contract for the exchange of real property provides that each party shall furnish an abstract satisfactory to the other, and one makes an objection to the abstract furnished him, and there is evidence from which either good or bad faith in making the objection may be found, the good faith of the objection is a question of fact to be found from the evidence and should not be determined on a demurrer thereto.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed February 7, 1920. Reversed.

*R. P. Evans,* and *George Clammer,* both of Manhattan, for the appellant.

*A. E. Crane,* of Topeka, and *Maurice Murphy,* of St. Marys, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff is seeking to recover damages from the defendant for failing to perform a written contract for the exchange of real property.. Judgment was rendered in favor of the defendant on a demurrer to the evidence of the plaintiff, who appeals. The parties to this action signed the following written agreement:

"This agreement made and entered into this 25th day of January, 1917, by and between W. E. White of Riley County, Kansas, the said party of the first part, and Julius Immenschuh of Pottawatomie County, State of Kansas, being the said party of the second part.

"Witnesseth that the said party of the first part hereby agrees to exchange all his right and title to the following described real estate to-wit: The South one-half of the Northwest Qr. of 24-9-10 in Pottawatomie County, the same to be free and clear of all encumbrance except one certain mortgage of $4,800 which the said second party agrees to assume and protect.

"For and in consideration of the above described real estate the said second party agrees to make warranty deed of property described as house No. 930 Pierre St., in the city of Manhattan, Kan.

"The same to be free and clear of all encumbrance whatsoever and also to pay $100 in cash on the exchange of the deeds.

"Both parties are to furnish satisfactory abstracts to the above properties. The above mentioned $100.00 is hereby paid and receipted for. Parties hereby both agree to consummate the titles on or before the first day of March, 1917.

"The party of the first part is to have immediate possession of the above-described house in Manhattan, Kan."

The defendant set up two defenses; one was, that the land to be conveyed by the plaintiff to the defendant was embraced within a drainage district that had been established; that a ditch had been surveyed across the land; that the completion of the ditch would subject the land to a heavy tax; and that the plaintiff fraudulently concealed these facts from the defendant. The other defense was that I. J. Frost, the agent of the defendant in making the exchange of the property, was at the same time, without the knowledge of the defendant, acting as the agent of the plaintiff. The answer alleged that, "Upon learning said facts this defendant immediately notified the plaintiff that he would not comply therewith and that the said contract was rescinded, and since that time it has not been a valid and binding contract between the parties."

White v. Immenschuh.

At the conclusion of the plaintiff's evidence, the defendant demurred thereto, "on the ground it does not show facts sufficient to show a cause of action in favor of the plaintiff and against the defendant and that the contract disclosed by evidence is void under the statute of frauds." The demurrer was sustained by the court. There was evidence which tended to show that the land was included in a drainage district; that each of the parties to the contract knew that I. J. Frost was acting as the agent for the other in making the exchange of the properties; and that the defendant had determined not to perform the contract on his part. There was no evidence to show that the ditch had been surveyed across this land.

1. The principal question argued by the defendant to sustain the judgment is that the organization of the drainage district and the assessments on the lands embraced therein to pay for the construction of a ditch constituted an encumbrance on the land within the meaning of the contract signed by the parties to this action. In support of his contention the defendant cites *Feldhut v. Brummitt,* 96 Kan. 127, 150 Pac. 549, where this court said:

"The plaintiff and defendant made a contract to exchange landed properties and named a real-estate agent as depositary to hold their respective deeds until their abstracts of title were approved. Notwithstanding the disapproval of defendant's title, the real-estate agent delivered plaintiff's deeds to defendant. In a suit for rescission and cancellation of plaintiff's deeds the issue turned largely upon the question whether a certain irrigation ditch and certain rights of way for irrigation ditches were incumbrances on the land. *Held,* (*a*) That the established irrigation ditch plainly observable on the property was not an incumbrance to the extent of being a breach of covenant; (*b*) Rights of way for irrigation ditches incumbering the record, indefinite in extent, not yet established nor open to view by inspection of the property, with the rights of the servient .feeholder undetermined, do constitute incumbrances in breach of covenant." (Syl. ¶ 1.)

In that case the companies. that had secured the rights of way for irrigation ditches had probably been organized for profit, in which event a rule differing from that now sought to be invoked by the defendant would control. In the present case the lands were assessed to pay for benefits received. Rights of way for irrigation ditches granted to irrigation companies organized to receive pay for the water furnished by them would be an encumbrance on the land, although the

land might be greatly increased in value on account of the construction of the ditches. But the establishment of a district to pay for improvements made therein, where the improvements benefit the land, does not constitute an encumbrance within the meaning of the contract. Nor does the assessment of the costs of such improvements against the property affected thereby constitute an encumbrance until the assessments have ripened into a tax and have become a lien under the general tax laws of the state.

In *Tull v. Royston*, 30 Kan. 617, 2 Pac. 866, this court said:

"Where a deed executed on September 17, 1881, warranted the lots therein described to be free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, assessments, taxes, liens and incumbrances of what kind or nature soever, the maker of the deed is not liable upon the covenants of warranty for a sidewalk tax or assessment authorized by an ordinance of a city of the third class, adopted September 13, 1881, as such tax or assessment was not due or payable until November 1, 1881, and was therefore no lien or incumbrance upon the property until that date." (Syl.)

Again, in *Armstrong v. Trust Co.*, 96 Kan. 722, 153 Pac. 507, this court said:

"In an action to recover for breach of a covenant against incumbrances, it was shown that in 1902 the city of Kansas City levied special taxes against the real estate for local improvements, the assessments being payable in ten annual intallments. After they were levied and before any installments were paid, the assessments were declared void and their collection enjoined. On March 24, 1912, subsequent to the conveyance of the land to plaintiff, the city relevied the assessments under the provisions of section 993 of the General Statutes of 1909. *Held*, the real estate was subject to reassessment of the taxes, which made them in a strict sense an incumbrance, yet they did not become an incumbrance in the sense contemplated by the covenant until they became a lien by virtue of the relevy." (Syl. ¶ 2.)

The principle declared in these actions controls in the present one.

2. Does the statute of frauds render this contract unenforceable? The defendant presented that question on his demurrer to the plaintiff's evidence, but he does not advance any argument to sustain that position. The contract was complete; it was in writing and provided for the exchange of land, and was signed by each of the parties thereto. It com-

White v. Immenschuh.

plied with the statute of frauds, and, so far as that statute is concerned, is enforceable by either party against the other.

3. Defendant argues that he should not answer in damages for his failure to perform his part of the contract, because of the fact that I. J. Frost was acting as the agent of both parties in bringing about the execution of the contract for the exchange of properties. The evidence tended to show that each party knew that Frost was acting as the agent of the other, and for that reason neither party can avoid the performance of the contract or the payment of damages for failure to perform it, if the injured party elects to pursue the latter remedy.

4. The defendant argues that the evidence of the plaintiff did not show that he had tendered to the defendant a deed for the property in Manhattan. The answer of the defendant alleged that he had notified the plaintiff that he would not comply with the contract. Under such circumstances it was not necessary for the plaintiff to tender a deed to the defendant before commencing this action. (*Bell v. Wright,* 31 Kan. 236, 1 Pac. 595; *Chadsey v. Condley,* 62 Kan. 853, 62 Pac. 663.)

5. The abstract of title furnished to the defendant was not satisfactory to him. His objection thereto was based on the establishment of the drainage district. The contract provided that each party should furnish a satisfactory abstract to the other. On the trial it was

"Admitted by and between the plaintiff and the defendant that the plaintiff furnished an abstract to the South half of the Northwest quarter of Section 24, in Township 9, Range 10, Pottawatomie County, Kansas, and that the abstract showed a mortgage of $4,800.00 against the premises, and that it also showed the organization and establishment of a drainage district, known as the Belvue district, which organization and establsihment was prior to the date of the contract involved in this action, and that the defendant was satisfied with the title in every other respect, other than the showing of the drainage district thereon."

Frost, the agent, testified that he saw Immenschuh about ten days after the contract was signed, and further testified as follows:

"Question: What took place there? Answer: Mr. Immenschuh came in and told me he didn't think we could go through with the deal; I asked him why. He said because he didn't think White could give a title to the place. I answered him by saying that would be up to White,

White v. Immenschuh.

that White agreed to give a good title and he would have to do it. He says, 'Mr. Frost, I don't believe I can deed the property. I can't do it without taking it through court and it will cost me more than I want to put up to take it through court.' Then he told me something about a drainage district that was to go through the land that he was buying."

.    .    .    .    .    .    .    .    .    .    .    .

"Question: What further took place? Anything said about the contract? Answer: Immenschuh wanted the contract and I said I could not let him have it; neither would I let White have it. Sometime afterwards Mr. Miller came in, a lawyer from St. Mary's, and wanted the contract, and I did not let him have it but let him take a copy.

"Question: Was anything said by Immenschuh concerning paying you at that time in your office? Answer: Yes, Immenschuh said, 'I am going to try to get out of this deal and I want you to stay by me and help me out of it.' I told him there was nothing to stay by only the contract; he says, 'I will pay you for your trouble and you will have the property back on your list again.' I says, 'You already owe me a commission; that is already due under the contract.'"

From that evidence the court could have found that the objection to the abstract was not made in good faith; on the other hand, the court could have found to the contrary. If the defendant in good faith objected to the abstract, or rather to the title disclosed by the abstract, he could not have been compelled to perform the contract, and would not be liable for damages for his failure to do so. (*Hollingsworth v. Colthurst*, 78 Kan. 455, 96 Pac. 851; *Read v. Loftus*, 82 Kan. 485, 108 Pac. 850; *Hodges v. Ferry & Co.*, 92 Kan. 21, 140 Pac. 102; *Ramey v. Thorson*, 94 Kan. 150, 146 Pac. 315; *Canaday v. Miller*, 102 Kan. 577, 171 Pac. 651.) The good faith of the defendant in making his objection to the abstract was a question of fact to be found by the court from the evidence, and could not properly be determined on a demurrer thereto.

The judgment is reversed, and the cause is remanded with directions to overrule the demurrer to the evidence and to proceed in accordance with the principles herein set forth.