[Civ. No. 4716. Fourth Dist. Dec. 14, 1953.]

H. I. STEVENS et al., Appellants, v. H. D. CURTIS, Respondent.

Rimel & Johnston for Appellants.

Guthrie, Darling & Shattuck, Donald K. Hall and Hugh W. Darling for Respondent.

BARNARD, P. J.—On May 26, 1947, the defendant leased 71 acres of land in the "Pauma Rancho" to the plaintiffs for two years, with an option to buy. The agreement provided for a rental of $15,000 payable in advance and $15,000 payable on December 1, 1948, with an option to purchase the property prior to May 31, 1949, by paying an additional $5,000 and giving a note and trust deed for $35,000. It was agreed that the plaintiffs should pay all water bills and "all water assessments levied; during the term of the lease; that the plaintiffs should have the right to vote the defendant's water stock in the Pauma Valley Water Company during said term; and that if the option was exercised the water stock would be transferred to the plaintiffs and the land conveyed by grant deed by which the defendant "warrants that his title shall be subject only to covenants, conditions, restrictions, rights and rights of way of record."

The plaintiffs took immediate possession of the property; paid the $30,000 rental as agreed; paid the water assessments during the lease period amounting to $1,853; attended and took part in the meetings of the water company; and spent some $13,000 in improving the property.

At the time the lease and option were executed the parties secured a preliminary title report, which made no mention of water. Shortly prior to May 31, 1949, the plaintiffs gave notice of their intention to exercise the option. On June 13, 1949, the escrow agent secured another preliminary title report, to which was appended a note stating that by an agreement between the Pauma Valley Water Company and the United States of America dated April 13, 1948, provision was made for a loan of $8,500 to the water company subject to stock assessments to be levied by the company for repayment of the debt, and that the water company had executed a trust deed in favor of the United States in this amount covering rights of way for irrigation purposes over certain land. The defendant executed a deed conveying the property to the plaintiffs, and the plaintiffs paid a further $5,000 and executed a trust deed covering the remainder of the purchase price. On July 7, 1949, the escrow holder wrote to the title company authorizing it to record the deed and deed of trust when it could issue its policy of title insurance showing title in plaintiffs, subject only to the matters shown in the preliminary report. On the same day, July 7, 1949, the plaintiffs' attorney wrote to the defendant stating that it had been necessary

for them to exercise the option and execute the deed of trust in order to protect their interests because of the extensive improvements made during the lease term, and that they did not waive any rights they might have because of misrepresentations in regard to water conditions, or a breach of the agreement to transfer the water stock free of encumbrances. Later, the deed and deed of trust were recorded and a policy of title insurance was issued. The water stock was transferred to the plaintiffs on August 1, 1949.

With respect to the government loan, it appears that in the spring of 1947 the water company had applied for such a loan of $15,000 with which to make certain improvements to its distribution system and in that connection the defendant and other stockholders had waived certain rights in favor of the government until the loan was paid, and had agreed to pay all assessments, duly levied on their stock, for the operation and maintenance of the distribution system and for the repayment of the indebtedness. This agreement and the trust deed in favor of the government were recorded on June 3, 1947. In 1948, in accordance with that agreement, the water company borrowed an additional $8,500 from the government in order to complete the improvements.

The plaintiffs brought this action on May 25, 1950, for declaratory relief and for damages. In the first cause of action it was alleged that, without the knowledge of the plaintiffs, the defendant and other stockholders of the water company had executed an agreement with the government requiring them to pay assessments levied for the purpose of repaying the sums borrowed from the government; that a controversy exists between the parties with reference to plaintiffs' obligation to pay said assessments; that plaintiffs contend that because the shares of water stock are appurtenant to the land this encumbrancing of the water company's distribution system constituted a breach by defendant of his covenant against encumbrances; that the defendant contends that he has committed no such breach; and that the plaintiffs desire a declaration of their rights and duties, with a judgment for such amount as may be due. In a second cause of action it was alleged that the defendant represented to the plaintiffs that an ample water supply from the Pauma Valley Water Company was available; that he knew that the supply available through the company's facilities was inadequate, and that its facilities were in poor condition and would require the expenditure of large amounts in order to provide sufficient

water; that the plaintiffs believed and relied on the false statements made by the defendant, and in reliance thereon had spent large sums of money; that before they were able to learn the true facts with reference to the insufficiency of the water supply they had spent such large amounts that they were obliged to and did exercise the option; and that they were damaged in the sum of $17,000.

At the conclusion of the plaintiffs' case, the defendant moved for a judgment of nonsuit as to each cause of action. The court denied the motion as to the first cause of action, and granted the motion as to the second cause of action on the ground that after learning that the water supply was insufficient the plaintiffs had not rescinded but had gone ahead and spent large sums of money; that they had then entered into a further contract with the defendant by exercising the option; and that they had thereby waived any claim for misrepresentation. The trial then proceeded with respect to the first cause of action. The court made findings in favor of the defendant, finding and concluding that the defendant had not breached any covenant or warranty against encumbrances, and ordering a declaratory judgment declaring that there had been no breach by defendant of any covenant or warranty; that defendant's warranty against encumbrances had not been violated by any water stock assessments arising out of these government loans to the Pauma Valley Water Company; and that it is plaintiffs' duty to pay any such water stock assessments. Judgment was entered accordingly, and the plaintiffs have appealed from that judgment and from the judgment of nonsuit in the second cause of action.

With respect to the first cause of action, the appellants contend that the findings to the effect that the defendant had not breached any covenant or warranty are not supported by the evidence; and that the conclusions of law, to the effect that these water stock assessments did not constitute encumbrances within the meaning of the original contract and the grant deed, are contrary to law and to correct findings. It is argued that under section 1113 of the Civil Code the word "grant" in the deed implied a covenant against encumbrances; that section 1114 provides that the word "encumbrance" includes "taxes, assessments, and all liens upon real property"; that under section 658 the words "real property" include that which is appurtenant to land; that since this water stock was appurtenant to the land it was a part of the real property;

that the deed given relates back to the date of the option agreement; and that the obligation to pay the government loans was an encumbrance since the water stock would be subject to sale if the assessments levied for the purpose of repaying those loans were not paid. The appellants admit that it would be unreasonable to contend that assessments on the water stock, to cover the cost of ordinary operation and maintenance of the distribution system, would constitute a breach of a covenant against encumbrances. They argue, however, that since the respondent consented to the various instruments required by the government in making these loans, including an agreement to pay assessments levied for the purpose of repaying the loans, this constituted an encumbrance covered by the warranty; that the fact, as found by the court, that the appellants had prior knowledge of the government loans is immaterial since respondent's warranty required him to pay off that encumbrance; and that there was no waiver or estoppel since respondent was notified on July 7, 1949, that the appellants did not waive any rights which they might have because of a breach of the agreement to transfer the water stock free and clear of encumbrances.

 The appellants were charged with knowledge that such a water corporation might and would levy assessments upon its shares for the purpose of paying the costs of operating and maintaining its distribution system. (*Watson* v. *Santa Carmelita Mut. Water Co.,* 58 Cal.App.2d 709 [137 P.2d 757].) A normal part of such maintenance includes such things as the laying of pipelines and redrilling of wells, which here appear. No logical distinction can be drawn between such costs when paid for out of cash on hand, or out of money borrowed and which must later be repaid. No cases are cited, and we have found none, which would make any distinction in that regard. Such assessments do not become liens on anything until the assessments are actually made. When made, they become a lien on the water stock itself rather than on the land. (Civ. Code, §§ 330.24 and 331.) Such assessments would not constitute encumbrances in the sense contended for by the appellants. (*Jaques* v. *Tomb,* 179 Cal. 444 [177 P. 280]; *In re Mead's Estate,* 133 Misc. 370 [232 N.Y. S. 606]; *White* v. *Immenschuh,* 106 Kan. 333 [187 P. 667].) A further consideration is that the respondent's obligation was to convey the property subject to conditions and rights which were of record. The records of the water company disclosed the full situation with respect to these

government loans, the appellants knew of these loans and that future assessments would be required to repay them, and they were required to and did pay assessments made for that purpose during the term of the lease. The only reasonable inference is that they expected to continue to do the same thing if they exercised the option, and the circumstances were sufficient to estop them from relying on such an implied warranty as that now asserted. No reversible error appears in connection with the judgment on the first cause of action.

■ With respect to the second cause of action it is contended that the court erred in granting the nonsuit. The nonsuit was granted on the well-known theory that when a party, after discovery of the fraud, enters into new arrangements or engagements concerning the subject matter of the contract he is deemed to have waived any claim for damages on account of the fraud. (*Schmidt* v. *Mesmer,* 116 Cal. 267 [48 P. 54] ; *Schied* v. *Bodinson Mfg. Co.,* 79 Cal.App.2d 134 [179 P.2d 380].) There is an equally well settled rule, however, that where a party at the time he discovers the true conditions has proceeded so far with his plans and so far obligated himself that rescission would have afforded an inadequate remedy, he may elect to complete the contract without waiving his right to claim damages for the fraud. (*Rothstein* v. *Janss Inv. Corp.,* 45 Cal.App.2d 64 [113 P.2d 465] ; *Hines* v. *Brode,* 168 Cal. 507 [143 P. 729] ; *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744 [192 P.2d 935] ; *Schmidt* v. *Mesmer,* 116 Cal. 267 [48 P. 54].) In electing to exercise the option here the appellants were not entering into a new arrangement or engagement concerning the subject matter of the contract, but they were merely exercising their right under the original contract. Before the escrow was closed they notified the respondent that they would not waive any rights they might have because of any misrepresentations with respect to the water conditions. The evidence received, and the evidence offered and refused, presented questions of fact with respect to the claimed misrepresentations as to the water conditions, and these questions of fact did not become immaterial merely because the appellants had exercised the option given by the original agreement. They had a right to affirm the contract and sue for damages, instead of seeking a rescission. It follows that the motion for a judgment of nonsuit, with respect to the second cause of action, should not have been granted.

The judgment is affirmed with respect to the first cause of action, and reversed with respect to the second cause of action. The appellants to recover their costs on appeal.

Griffin, J., and Mussell, J., concurred.