D. M. FERRY & COMPANY v. JOHN BALLINGER AND WM. McD. ROWAN.

No. 269.*

CONSTRUCTION OF CONTRACT— *Sale of Goods.* Where a contract provides for payment at a stipulated price for clean and satisfactory seed, to be made immediately upon the receipt of such seed and the ascertaining that it is vital and fit for seed purposes, the payee cannot arbitrarily reject such seed if it is clean and vital and fit for seed purposes.

* Petition for order to certify denied by supreme court May 11, 1899.—REP.

Error from Finney district court; Wm. Easton Hutchison, judge. Opinion filed March 20, 1899. Affirmed.

*E. A. Gott*, and *H. F. Mason*, for plaintiff in error.

*A. J. Hoskinson*, and *Milton Brown*, for defendants in error.

The opinion of the court was delivered by

Dennison, P. J.:   This action was commenced in the district court of Finney county by John Ballinger and Wm. McD. Rowan, as plaintiffs, to recover from D. M. Ferry & Company on a contract of which the following is a copy:

"Memorandum of Agreement made this 18th day of March, 1895, by which I, John Ballinger, of Garden City, agree to act as agent for D. M. Ferry & Co., of Detroit, Mich., in undertaking to raise the following-named seeds on land and in quality and condition suitable for the purpose, and located in section ———, township of ———, county of ———, state of Kansas, it being understood that the stock seed and the seed crop produced therefrom is and is to remain the property of D. M. Ferry & Co.: Five acres of Ex. Early Hackensack muskmelon; thirty acres of Sweetheart watermelon; five acres of Hubbard squash. And I hereby agree to properly prepare and plant said land with seed to be furnished by D. M. Ferry & Co. free on board cars at Detroit, Mich., and to be paid for as herein provided.

"I further agree to properly plant, cultivate and care for the crop without using, selling or allowing to waste any of the fruit; to harvest, separate, cure and clean the seed product as well as practicable with ordinary farm machinery and so as to avoid discoloring, splitting, heating, mixing or otherwise injuring it for seed purposes, and to deliver the entire seed

product to D. M. Ferry & Co., at their warehouse in Detroit, Mich., without reserving, selling, feeding, wasting, or allowing any portion of it to pass from my possession except as shipped and delivered to said D. M. Ferry & Co. Said delivery to be made as soon as the seed can be put in suitable condition, and before December 31, it being agreed that D. M. Ferry & Co. may deduct from the price per pound which they hereinafter agree to pay one cent per pound (except in the case of peas, beans, and corn, when the deduction shall be five cents per bushel) for each week's delay after December 31 in making such delivery. I further agree, that as far as I am able to prevent it, there shall be no other plants of the same species grown within twenty rods of the above described crop, and that I will take such precautions as D. M. Ferry & Co. may direct to prevent any seed other than that produced from the stock sent me by D. M. Ferry & Co. becoming mixed with that grown under this agreement.

"It is further mutually agreed, that if plants or fruits the seed of which would injure the quality of the crop should appear, the grower, acting under the direction of D. M. Ferry & Co., is to reject and make such disposition of them as will prevent their seed becoming mixed with that of the general crop; and if so requested by D. M. Ferry & Co., the grower is to save separately, properly mark and ship the seeds from plants or fruits of any particular type, or from any part of the field, and D. M. Ferry & Co. agree to pay the grower for the labor of making such rejections or selections, or they may themselves at any time enter the field and make such selections or rejections at their own expense, but in either case they are not to pay for any necessary damage to the general crop resulting from such work. It is further mutually agreed that upon delivery of the crop it is to be carefully weighed and tested, and if in need of any further cleaning or hand picking, said work is to be done by D. M. Ferry & Co. at their expense, and settlement is to be made on the net weight after such recleaning or hand picking. All refuse, screenings or pickings to

belong to the party who separates them.  It is further agreed, if the crop as delivered is not fit for use for seed purposes and cannot be made so without an unreasonable amount of recleaning, D. M. Ferry & Co. may refuse to accept it.

"It is further mutually agreed, that the stock seed furnished shall be paid for at the rate of contract price of crop, payment to be deducted from the first remittance for delivered crop ; or if from any cause the crop is a failure, or unacceptable for seed, payment is to be made on or before December 31, 1895.   In consideration of the faithful carrying out of the provisions of this agreement on the part of said John Ballinger, and for his services in the growing and delivering of said seeds, D. M. Ferry & Co. hereby agree to pay him at the rate of ten cents per pound for melon seed and twelve cents per pound for Hubbard squash, for every pound of clean and satisfactory seed he may deliver in accordance with this agreement ; said payment to be made immediately upon the receipt of such seed and the ascertaining that it is vital and fit for seed purposes.              JOHN BALLINGER.
                                  W. McD. ROWAN.
                                  D. M. FERRY & Co."

The petition alleged full performance of the contract by the plaintiffs ; that they had shipped the seed crop to defendant, who had received and recleaned the seed, and that the defendant was indebted to them in the sum of $566.48, which it failed and refused to pay.

The defendant below filed its answer, in which it alleged it only received from the plaintiffs below 717 pounds of muskmelon seeds and 221 pounds of squash seeds "under said contract which were fit for use for seed purposes or could be made fit for use for seed purposes without an unreasonable amount of recleaning, or were acceptable for seed, or were satisfactory seed, or were vital and fit for seed purposes."   It is also alleged that the plaintiffs have been paid accord-

ing to the terms of said contract, and that all other seeds delivered by said plaintiffs were melon and squash seeds, and that they were "unfit for seed purposes and could not be made fit without an unreasonable amount of recleaning, and were not satisfactory seed, and were not vital, and were not fit for seed purposes." A general verdict was rendered for the plaintiffs below in the sum of $558.46. The jury also returned answers to the following special questions:

" 1. Were the watermelon seed that were shipped by plaintiffs to defendant satisfactory to defendant? No.

" 2. Were the squash seed that were shipped by plaintiff to defendant in January satisfactory to defendant? No."

Judgment was rendered on the general verdict, and the defendants below bring the case here for review. Several assignments of error are argued in the brief of the plaintiff in error, the principal contention being that the court erred in overruling its motion for judgment on the special findings. It is contended that by the terms of the contract the seed must be satisfactory to the plaintiff in error, and not being satisfactory to it, no cause of action accrued against it. Counsel for plaintiff in error have made an excellent argument on this proposition and have cited numerous authorities to support it. We think, however, that the contract will not bear the construction they put on it. It is true the contract provides that the company is to pay the stipulated price for "clean and satisfactory seed," but it also says that such payment shall be made "immediately upon the receipt of such seed and the ascertaining that it is vital and fit for seed purposes." A careful construction of the entire contract would require the plaintiff in error to pay for all cleaned seed

that was ascertained by it to be vital and fit for seed purposes.   This was the theory of both parties in their pleadings and in the trial of the case.   While the word "satisfactory" is used as a qualifying adjective in the contract, we could not decide that the plaintiff in error was to have the arbitrary right to reject the seed and say it was not satisfactory to it, although it might be clean and vital and fit for seed purposes, without disregarding some of the terms of the contract.

It is also contended by the plaintiff in error that the court erred in its instructions and in the introduction of testimony because there was no allegation in the petition that the seed was vital and fit for seed purposes.   This omission in the petition was abundantly remedied in the answer and reply.   We think no good purpose can be served by extending this opinion and noticing in detail the other assignments of error.

The judgment of the district court is affirmed.