No. 18,533.

G. W. HODGES, *Appellee*, v. D. M. FERRY & COMPANY,
*Appellant*.

SYLLABUS BY THE COURT.

SALE—*Watermelon Seeds—Contract—Quality of Seeds to Be
Satisfactory to Purchaser—Refusal to Accept.* The rule
stated in the case of *Hollingsworth v. Colthurst*, 78 Kan. 455,
96 Pac. 851, applied to a contract for the growing and de-
livery of a crop of watermelon seeds, and held that accept-
ance of and payment for the crop were left to the considera-
tion, judgment and satisfaction of the purchaser, subject to
the limitation that he should act in good faith.

Appeal from Stevens district court; WILLIAM H.
THOMPSON, judge. Opinion filed April 11, 1914. Re-
versed.

*F. S. Macy*, of Liberal, for the appellant; *Standish
Backus*, of Detroit, Mich., of counsel.

*Solon W. Smith*, of Oklahoma City, Okla., and *Clyde
R. Commons*, of Liberal, for the appellee.

The opinion of the court was delivered by

BURCH, J.: In the season of 1911 the plaintiff, Hodges, grew a crop of watermelon seeds and in November, 1911, delivered it to the defendant under a contract the material portions of which follow:

"It is further mutually agreed that upon delivery of the crop it is to be carefully weighed and tested. Any necessary remilling is to be done by D. M. Ferry & Co., at their expense. Payment is to be made only for such seed as they consider sufficiently clean, bright and vital for Seedman's use, no credit being given for dirt, damaged or poor seed which has to be removed. In all cases the screenings and culls are to remain the property of the party who separates them from the crop. It is further mutually agreed that if the crop as delivered is impure through fault of the grower or in any other respect is, in the judgment of D. M. Ferry & Co., unfit for Seedman's use and can not be made fit without an unreasonable amount of recleaning or handpicking, D. M. Ferry & Co. may refuse to accept it in fulfillment of this contract. . . . In consideration of the faithful carrying out of the provisions of this agreement on the part of said G. W. Hodges and for his services in the growing and delivering said seeds, D. M. Ferry & Co., hereby agree to pay him at the rate of 12c per pound for all the seed satisfactory to said D. M. Ferry & Co. which he may deliver in accordance with this agreement in excess of the Stock Seed furnished him, said payment to be made immediately upon the receipt of such seed and the ascertaining by said D. M. Ferry & Co. that it is vital and fit for seed purposes."

The seeds were rejected. In an action to recover the compensation stipulated in the contract the plaintiff prevailed and the defendant appeals.

The court interpreted the contract as providing for payment for such seeds as were sufficiently clean, bright, and vital for seedsmen's use, payment to be made as soon as the defendant ascertained the fact, and instructed the jury that the principal question for

them to determine was whether or not the seeds were sufficiently clean, bright, and vital for seedsmen's use.

The contract provided that payment should be made, not for such seeds as were sufficiently clean, bright, and vital for seedsmen's use, but for such seeds only as the defendant considered of that character. The right was expressly reserved to reject the crop, not if it was unfit for seedsmen's use, but if in the judgment of the defendant it was unfit. The agreement to pay was not for all seeds which were clean, bright, and vital, but for all seeds which were satisfactory to the defendant. The only provision of the contract in which a reservation of this kind was not inserted was the clause relating to time of payment. Since the condition upon which any payment depended was already fixed it was not necessary that it should be repeated there, and acceptance of and payment for the crop were left to the consideration, judgment, and satisfaction of the defendant. It follows that the contract was misinterpreted and the case was sent to the jury on a wrong theory.

The contract belongs to the class considered in the case of *Hollingsworth v. Colthurst*, 78 Kan. 455, 96 Pac. 851.

"Parties to a contract may lawfully stipulate that performance by one of them shall be to the satisfaction of the other. . . . If such a contract be made, the party to be satisfied is the judge of his own satisfaction, subject to the limitation that he must act in good faith. He should fairly and candidly investigate and consider the matter, reach a genuine conclusion, and express the true state of his mind. He can not act arbitrarily or capriciously, or merely feign dissatisfaction. The application of these principles is not limited to transactions involving personal taste and preference." (p. 456.)

The actual character of the seeds, whether clean, bright and vital, according to some standard of seedsmen, or not, was not the matter to be determined, and

was not even pertinent to the issue, except in connection with proof of bad faith.

It will be observed that the defendant's seed-growing contract has been materially changed since the decision in the case of *Ferry v. Ballinger*, 8 Kan. App. 756, 60 Pac. 824.

Strangely enough, the court permitted the jury to be interrogated specially concerning whether or not the defendant acted in good faith in rejecting the seeds. The answer was, "We don't think they did." This answer might well result from the wrong interpretation placed on the contract by the court in the instructions given, and from the failure of the court to instruct on the subject of candor and good faith in the exercise of consideration and judgment respecting the quality of the seeds and on the subject of the genuineness of the defendant's dissatisfaction with them. Besides this, the court rejected evidence material to the question propounded to the jury.

After receiving the seeds the defendant proceeded to make a germination test by methods long in use, which were described in detail. Only forty per cent of the samples sprouted. The seeds were then remilled, and three samples of the clean product were tested, which showed a vitality of fifty-six per cent, fifty-four per cent, and fifty-four per cent, respectively. In March, 1912, twenty-six samples were tested, which showed an average vitality of fifty and two-fifths per cent. Check samples employed in making the test showed a vitality of from ninety-four to ninety-six per cent. The average for watermelon seeds generally is, according to the experience of the defendant, eighty-six per cent, and the defendant requires a vitality of at least seventy-five per cent before it considers watermelon seeds merchantable for seed purposes. In March, 1912, the defendant sent samples of the seed to the botanist in

charge of the seed laboratory of the United States department of agriculture, together with the following letter:

"March 15, 1912.

"*Mr. Edgar Brown, Botanist in charge of Seed Laboratory, U. S. Department of Agriculture, Washington, D. C.*

"DEAR SIR:—Under another cover we are mailing you today two samples, No. 1 and No. 2, of watermelon seed, taken from an identical lot number 64480, and shall be pleased to have you make a germination test and report to us the result at your earliest convenience. If there is any charge for this work, we shall be glad to remit on receipt of your bill.

Respectfully,    D. M. FERRY & Co."

The plaintiff was duly advised of this action, and portions of the samples sent to the government laboratory were sent to the plaintiff. In response to the letter quoted the defendant received the following letter:

"UNITED STATES DEPARTMENT OF AGRICULTURE,
BUREAU OF PLANT INDUSTRY.

JFL                    SEED LABORATORY.

WASHINGTON, D. C., April 3, 1912.

"*D. M. Ferry & Co., Detroit, Mich.*

"Final report of germination test of seed received March 18, 1912:

"Test number 146466, sender's mark No. 1, name of seed Watermelon 64480. Duration of test in days, 8; germination per cent, 54.5%.

"Test number 146467, sender's mark No. 2, name of seed Watermelon 64480. Duration of test in days, 8; germination per cent 56.5.

"Delay in receiving reports can be saved by submitting your samples to our Branch Seed Laboratory, Agricultural Department Station, Lafayette, Indiana.

E. BROWN,
*Botanist in charge of Seed Laboratory.*

"The name of the United States Department of Agriculture must not be used for advertising purposes in connection with this report."

The court refused to allow this letter to be read in evidence, and refused testimony that the defendant considered the percentage of vitality stated in the letter to. be too low to be acceptable. Both were relevant to the question of the good faith of the defendant in rejecting the seeds. The letter was not, of course, admissible as evidence of the actual vitality of the seeds.

The judgment of the district court is reversed and the cause is remanded for a new trial.

Mr. Justice MASON not sitting.