No. 23,493.

A. C. Gould, *Appellee*, v. A. C. Stewart, *Appellant*.

SYLLABUS BY THE COURT.

1. Real-estate Agent—*No Completed Contract—No Commissions—Unsatisfactory Abstracts.* A real-estate dealer contracted with the defendant to find him a purchaser or one who would exchange lands with him—no commission to be paid unless the deal should be consummated. He found one with land to exchange who furnished abstracts of title which the attorney for the defendant refused to approve. *Held,* that it was not the defendant's duty to return such abstracts for completion and correction, in order to avoid liability for the commission.

2. Same—*Retention of Abstracts.* As good faith is always requisite in such transactions as the one indicated in the preceding paragraph, and as an instruction on the subject was requested by the defendant, it was not error to charge as to the good faith of the defendant.

3. Same—*Contract Relating to Commissions—Signature of Parties.* The location of the signatures to a contract is not material provided they are attached with the understanding that all the provisions of the instrument are to be binding.

4. Same—*Abstracts—Reliance on Advice of Attorney.* Under the facts shown it was error to refuse an instruction that the defendant had a right to rely on the advice of his attorney, who declined to approve the abstracts, and refuse to carry out the trade.

Appeal from Labette district court; Elmer C. Clark, judge. Opinion filed April 8, 1922. Reversed.

*Archie D. Neale,* of Chetopa, for the appellant.
*E. L. Burton,* and *Paul MacCaskill,* both of Parsons, for the appellee.

The opinion of the court was delivered by

West, J.:    The plaintiff sued to recover a commission for the sale of the defendant's farm, alleging a verbal agreement and understanding that he was to have two and one-half per cent commission, and thereafter a written contract to the same effect, a copy of which was set out. The petition alleged that the plaintiff found a purchaser ready and able to complete the deal but the defendant refused to perform his part of the contract.

The answer denied such failure and refusal and alleged that the agreement was to pay a commission of $400 provided the trade was consummated, and there was a specific denial that the defendant signed the contract set up in the plaintiff's petition, and an aver-

ment that just preceding the signing it was agreed that this sentence should be added, after which the contract was signed: "It is hereby agreed that no commission shall be collected until deal is consummated." It was further alleged that the deal was never consummated; that the abstracts offered by the other party were not satisfactory to the defendant's attorney, wherefore the defendant declined to convey. Also, that Marion Moore, whose land was to be given in exchange for the defendant's, sued the latter for specific performance, and failed in the action.

The plaintiff testified that he was not present when the notation was placed on the contract and did not authorize anyone to place it there.

Moore testified that he was present when the contract was drawn up.

"After the signing of the contract, and about the time witness put up his abstracts in the bank, Stewart told witness that his wife had signed the deeds and he was ready to 'come through with the deal.'"

He further testified that he was ready and willing at all times to comply with his contract with Stewart, and willing to make any corrections required in the abstracts.

"Moore signed the contract in Chetopa, and his wife signed it at Bluejacket, several days afterwards; at the time she signed it it had at the bottom the statement, mentioned above, that no commission was to be paid unless the deal was consummated; that he knew that statement was there when his wife signed the contract."

Defendant Stewart testified that he told the plaintiff—

"'About this commission, I will never pay a commission on this unless the trade goes through; sometimes a man don't make these trades when he starts in,' and he said that would be all right; he didn't expect any commission unless the trade went through. This was the only arrangement I ever had with Gould about the payment of commission on the trade with Moore. That when the contract was drawn and signed in Craft's office, Mr. A. R. Bell said to Mr. Gould, in substance, 'The arrangement is that no commission is to be paid unless the sale is consummated, and I want that in the contract that Mr. Martin is drawing now.' That Mr. Gould replied to Mr. Bell, 'That is all right; that is what we agreed upon.'"

F. O. Martin wrote on the contract: "It is hereby agreed that no commission shall be collected until the deal is consummated."

This was before the contract was signed.

A. R. Bell testified that "at the time Martin wrote those words on the contract the contract had not been signed by the parties." Another witness testified that he heard the parties talking about this land trade.

Gould v. Stewart.

"I made some remark about the commission, and Gould told me that he was getting, if I remember right, four hundred or four hundred and fifty dollars of each of them, providing the deal stood up and the trade went through; he said, 'Otherwise, you know, I don't get anything.'"

The defendant requested nine instructions, including one to the effect that if the jury should find the defendant's attorney in failing to approve the abstracts acted in good faith on account of imperfection in the title to such lands, and by reason of such disapproval the deal failed to go through, the verdict should be for the defendant. Another, that it was not the duty of Stewart's attorney to call Moore's attention to any defects in his title, or to return the abstracts to Moore for the purpose of giving him time to perfect his title; that if Moore had agreed that the trade was to go through only in the event of the approval of the abstracts, he was bound by such agreement, and "inasmuch as fraud or mistake is not pleaded in this case, those are matters with which you have nothing to do." These requests were all refused and the jury were told, among other things, that if they should find the contract was made for the consummation of the exchange, even though there may have been some defects in the title as shown by the abstracts offered by Moore, it was the duty of Stewart to return the abstracts and give reasonable time for their correction, and his refusal to do so when Moore was ready, able and willing to comply with the terms would entitle the plaintiff to recover, provided the jury found from the evidence that Moore had approved the title of Stewart's lands and that Moore was financially responsible.

This instruction was also given:

"I may say to you that the written stipulation following the signatures on the contract, . . . 'It is hereby agreed that no commission shall be collected until deal is consummated' is not a contract which was ever executed by the plaintiff, A. C. Gould, and is not binding upon him, the contract which plaintiff claims to have entered into between himself and the defendant must be proved, if at all, by something other than said written contract, and for the reason that the same appears upon a contract not signed by the plaintiff and below the signatures of the parties who did sign the contract."

The jury returned a verdict in favor of the plaintiff for $563.25, and answers to eight special questions.

The defendant moved for judgment on the special findings, which motion was overruled, and the motion to set aside the judgment and grant a new trial was also overruled, and he appeals.

The main specifications of error are refusal to instruct the jury

as requested, error in instructions given and denial of motion for judgment on special findings.

The defendant insists that the answers show the contract was contingent on the consummation of the deal which was not consummated; that Stewart's attorney did not approve the abstracts of title and that it was error to instruct that it was Stewart's duty to make requirements and give time for them to be met; that as there was no fraud or bad faith charged, the court erred in admitting evidence to prove them. Also, that the court erred in charging that the contract with the added stipulation was not binding upon the plaintiff.

The first instruction complained of presents the question whether or not when a landowner contracts with a real-estate agent to pay him a commission for finding a purchaser, he to pay only on condition that the deal shall be consummated, and then the purchaser tenders abstracts for land which the seller is to receive in consideration for his, which abstracts the latter's attorney refuses to approve, the commission may be said to be earned. Ordinarily, the commission is earned when the agent finds a purchaser ready, able and willing to take the seller's property on the terms offered. But a contract to pay a commission when such purchaser is found only in case the deal actually goes through is a different thing. We see nothing unlawful or immoral in such a contract. The theory of the defendant is that such was the contract in this case both orally between the plaintiff and the defendant, and written between the defendant and the purchaser. If this be so, then it was not the duty of the defendant to have his counsel make requirements touching the abstracts to have them brought down to date and give reasonable time therefor, but he had a right, acting in good faith, to rely on his counsel's advice and refuse to complete the deal when the abstracts tendered were such that his counsel refused to approve them. In *Hollingsworth v. Colthurst,* 78 Kan. 455, 96 Pac. 851, the contract provided that the vendor should furnish an abstract showing satisfactory title. It was held that the vendee was the party to be satisfied and that "it was immaterial that the title was good if the vendee in good faith was not satisfied with it." (syl.)

In *Herrell v. Neef,* 80 Kan. 348, 102 Pac. 838, it was said in the opinion:

"The contract which the parties make governs. It might have provided that the abstract should be approved by the purchaser's attorney or that it be satisfactory to the purchaser himself." (p. 352.)

In *Read v. Loftus*, 82 Kan. 485, 108 Pac. 850, it was said:

"The parties by their contract agreed that the title should be made satisfactory to the plaintiff's attorney. . . . That such a stipulation is valid and will be enforced is not an open question in this state. (*Hollingsworth v. Colthurst*, 78 Kan. 455.)"  (p. 493.)

In *Hodges v. Ferry & Co.*, 92 Kan. 21, 140 Pac. 102, the court quoted from *Hollingsworth v. Colthurst*, supra, to the effect that parties to a contract may lawfully stipulate that performance by one of them may be to the satisfaction of the other, and—

" 'If such a contract be made, the party to be satisfied is the judge of his own satisfaction, subject to the limitation that he must act in good faith.' " (p. 23.)

In *Canaday v. Miller*, 102 Kan. 577, 171 Pac. 651, the vendor agreed to make abstracts of title and perfect title to the satisfaction of the vendee, who took the opinion of counsel who advised that the abstracts furnished were insufficient and that the title rendered was not marketable, and it was held that specific performance should not be decreed.  In the opinion it was said:

"The abstracts and title were to be made and perfected to the satisfaction of the defendant. He is not satisfied with either. He took the opinion of able lawyers on both subjects, who advised him the abstracts are insufficient and the title is not merchantable. His dissatisfaction is not captious, nor arbitrary, nor feigned and under his contract he is not obliged to go further." (Citing authorities.)  (p. 578.)

As good faith is always requisite in such transactions as here involved, and as the defendant requested an instruction touching the good faith of his attorney in passing upon the abstracts, no error was committed in that portion of the charge touching the matter of good faith.

The court correctly charged that the written contract was not one executed by the plaintiff and was not binding upon him, and that the contract which he claimed was to be proved by something other than the written contract.  But the reason given for this instruction: "That the same appears [that is the added stipulation] upon a contract not signed by the plaintiff and below the signatures of the parties who did sign the contract," might be subject to the interpretation that the parties who signed the contract are not bound by the stipulation appearing after their signatures.  To clear up any doubt in case the matter be tried again, it may be said that the location of signatures on a written contract does not determine the binding force of any provision or stipulation

contained in such contract.   (6 R. C. L. 640, § 56; 13 C. J. 306; *Ramey v. Thorson*, 94 Kan. 150, 146 Pac. 315.)

The answers returned show that some of the questions involved were not well understood by the jury or at least not clearly answered, but it was not error to refuse judgment thereon.   The court refused the requested instruction that if Moore submitted abstracts to Stewart, whose attorney examined and refused to approve them, he had a right to rely on the advice of such attorney and refuse to carry out the trade.   Nothing like this in substance was given, and its refusal was error.

Other matters not of substantial merit are discussed in the briefs, but need not be considered now.

For the reasons indicated the judgment is reversed and the cause remanded for further proceedings.