AVIS BROWN v. STATE AUTOMOBILE INSURANCE
ASSOCIATION OF DES MOINES, IOWA.[1]

January 3, 1944.

No. 33,515.

[1]Reported in 12 N. W. (2d) 712.

330

*C. E. Bramer* and *Meighen, Knudson & Sturtz,* for appellant.
*Freeman, King & Geer* and *Nelson & Plunkett,* for respondent.

PETERSON, JUSTICE.

Plaintiff, having recovered a judgment for $8,054 against A. L. Groth for negligently causing the death of her husband while he was a passenger in Groth's automobile, sues defendant to recover the amount of the judgment, claiming that it is liable therefor under an automobile liability insurance policy indemnifying Groth against the liability resulting in the judgment.

Defendant admits the issuance of the insurance policy, but alleges that prior to the accident causing the death the insurance had automatically lapsed and terminated for nonpayment of the premium.

At the trial, plaintiff claimed that the payment of the premium according to the terms of the policy was waived by defendant's agent, Cartwright, and that in consequence of the waiver the policy was in force and effect when the accident occurred.

On May 9, 1940, Cartwright, who was connected with the D. L. Williams Agency at Rochester, solicited Groth to take a policy of insurance issued by defendant to cover his 1936 Buick automobile. Groth was unable to pay the premium, and credit was extended to him. The policy was issued by defendant at its home office on May 13, 1940. It is dated May 9, 1940, and was received by the insured some time prior to May 15.

The instrument issued by defendant and received by Groth is a long sheet of paper which is folded in the middle. Immediately below the folding crease defendant's name is printed in large type. Below the name are the "DECLARATIONS." At the bottom of the page is the date, May 9, 1940, and defendant's signature. Below the signature is a space for endorsements, where a farm trailer endorsement is attached.

Under the word "Declarations" the name of the insured is given as A. L. Groth. Then follow statements concerning his address, occupation, policy period, which is for one year from the date of the policy, coverages, limits of liability for each coverage, amount of premium, which is $15.50, description of the automobile, the purpose for which the automobile is to be used, and declarations to the effect that no insurer had cancelled any automobile insurance issued to the insured during the preceding year; that he is the sole owner of the automobile; that no driver's license or permit for the insured has ever been refused, cancelled, or revoked; and that the named insured is an individual.

Under item 3 of the "Declarations" are listed in parallel columns the different kinds of insurance coverage and the limits of liability for each. The blank for bodily injury liability was filled in for $10,000 for each person and for $20,000 for each accident, and the one for property damage liability for $5,000 for each accident. This item declares:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the Association's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto."

There is no insurance clause nor any insurance contract provision above the signature or anywhere else on this page.

On the back of this page and extending over the entire sheet onto the back of the last page are insurance contract provisions. These begin with a statement that the subscribers, constituting the defendant association,

"Do Hereby Agree with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and of the statements contained in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:"

There is no signature at the end of, or elsewhere in, this printed matter.

Under the caption "INSURING AGREEMENTS," there are provisions relating to and defining the insurance coverage for each of the classes mentioned in the "DECLARATIONS." The word "insured" is defined so as to cover not only the *named insured* but also certain other specified persons.

There are policy provisions to the effect that "by acceptance of this policy" the named insured agrees "that the statements in the declarations" are his agreements and representations; that "this policy" embodies all agreements existing between him and defendant or any of its agents; and that upon certain conditions, if the "named Insured" acquires ownership of another automobile to replace the one described in the policy, the insurance shall cover such automobile.

Under the caption "CONDITIONS" are 26 provisions. Section 8 thereof defines the limit of bodily injury liability "stated in the declarations." Section 26 provides:

"Unless otherwise provided by endorsement attached hereto, the premium charged for this policy is due two (2) calendar months from the policy effective date, and failure of the Insured to pay the total premium to the Home Office of the Association at Des Moines, Iowa, on or before the due date thereof, shall cause this policy to automatically lapse and terminate on said due date, and upon the lapsing or terminating of the policy for non-payment it may be reinstated only with the consent of the Attorney and upon the payment of the total premium to the Home Office of the Association. It is expressly understood and agreed that no insurance will be afforded by this policy during any period of suspension or lapsation and, regardless of the amounts or dates of any premium payments, this policy shall in no event be extended beyond the original expiration date thereof. No notice of any kind or character shall be necessary to terminate or cancel this policy as provided by this paragraph."

Section 7 provides:

"No notice to any agent, or knowledge possessed by any agent or by any other person shall be held to effect a waiver or change in any part of this policy nor estop the Association from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the Attorney in fact for the Association; provided, however, that changes may be made in the written portion of the declarations by endorsement issued to form a part hereof signed by the Attorney in fact for the Association."

On June 25, 1940, defendant mailed the insured a final notice that the premium would be due on July 9, 1940. On July 13, 1940, it mailed him a notice that the policy had terminated for nonpayment of the premium. The insured testified on direct examination that he did not receive the notices and on cross-examination that he did not know whether he had received them. On July 16 the insured bought a 1937 Buick, and defendant's agent, Cartwright, agreed with him to transfer the insurance coverage from the 1936 to the 1937 Buick.

On July 25, 1940, Cartwright tried to collect the insurance premium from the insured. According to testimony for plaintiff, the insured gave Cartwright a check for five dollars to apply on the premium and agreed to pay the balance if he (the insured) "had any decent kind of a show at all at Rochester at the Fair." The show ran from August 6 to August 11, 1940. Cartwright saw the insured in Rochester immediately after the fair and tried to collect the balance of the premium from him but was informed by the insured that he would be lucky if he were able to pay certain riders who took part in his show and that he was going to have another show at Anoka in which he hoped to do better. The show at Anoka was held immediately following the fair at Rochester. Nothing further transpired between the defendant or its agents and the insured after Cartwright tried to collect the balance of the premium on the occasion mentioned. No bills were sent to Groth for the

balance due. No arrangements for further extensions of time within which to pay the balance of the premium were made. The Williams agency retained the five dollars but did not forward it to defendant. Consequently defendant received no part thereof.

On January 15, 1941, the insured had a collision with a train near Farmington, Minnesota, in which plaintiff's husband was killed. This accident occurred approximately eight months after the date of the policy, six months after it lapsed, according to its terms, for nonpayment of the premium, and approximately five months after the insured had his shows at Rochester and Anoka. The insured had in his pocketbook at the time of the collision a card which defendant had sent him with the policy, containing instructions concerning accidents.

After the accident the insured requested defendant to defend an action which had been brought against him by the plaintiff to recover damages for the wrongful death of her husband. Defendant disclaimed liability under the policy and refused to defend the action upon the grounds that the policy had lapsed and terminated for nonpayment of the premium and had been cancelled.

There was a directed verdict in favor of defendant. Plaintiff appeals.

Defendant contends here, as it did below, that the policy automatically lapsed and terminated on July 9, 1940, because of the insured's failure to pay the premium; that all the acts of Cartwright, claimed by plaintiff, with respect to extending credit, accepting partial payment of the premium, and extending the time to pay the balance of the premium were unauthorized, and that the insured had actual knowledge of these limitations on Cartwright's authority by the provisions contained in the policy. Plaintiff contends that the printed matter which was not above the defendant's signature was not a part of the policy and not binding on the insured; that, if the printed matter in question was a part of the policy, defendant by its conduct had waived the policy provisions with respect to the limitations on the authority of its agent Cartwright,

and that, by reason of such waivers and extension of credit, the policy was in force at the time of the accident.

We shall assume, in accordance with plaintiff's contentions, without so deciding, that the evidence presented a fact issue as to whether or not defendant by conduct waived the provisions of the policy requiring payment of the premium at its home office, withholding from its agents the power to extend credit for premiums, and requiring the consent of its attorney at the home office to reinstate lapsed policies. The record entirely fails to show that credit for any premium was ever extended for longer than two calendar months, the period allowable under the policy for payment of premiums at the home office. The assumptions do not compel decision in plaintiff's favor. There remain for decision the questions (1) whether the policy provisions printed on the back of the page on which the signature appears and the other pages described are part of the insurance policy; (2) if so, whether the provisions of the policy caused the insurance automatically to lapse and terminate for nonpayment of the premium without any affirmative action on the part of the insurer; and (3) whether the insured was obligated to pay the premium before a time which would result in such automatic lapsing and termination of the insurance.

■ Plaintiff's principal argument in support of the proposition that the printed policy provisions are not part of the insurance contract is that provisions on a signed instrument are no part thereof unless they appear above the signature. A signature simply authenticates the writing. Mesibov, Glinert & Levy, Inc. v. Cohen Bros. Mfg. Co. Inc. 245 N. Y. 305, 157 N. E. 148. The place of a signature on a writing is not controlling. While ordinarily a signature is placed at the end of an instrument, it may, unless by statute a signature is required to be subscribed, be placed anywhere on the instrument, as, for example, at the top, to one side, in the body, or elsewhere. In re Estate of Cravens, 177 Minn. 437, 225 N. W. 398; Gould v. Stewart, 111 Kan. 41, 206 P. 309; Fulshear v. Randon, 18 Tex. 275, 70 Am. D. 281; James v. Patten, 6 N. Y. (2 Selden) 9, 55 Am. D. 376; Herubin v. Malackowski, 113 Misc. 100, 184 N. Y. S.

829; Conrad v. Shapiro, 29 Pa. Dist. 1143; McAbee v. Gerarden, 187 Wis. 399, 204 N. W. 484; Alexander Hamilton Institute v. Hart, 180 Wis. 90, 192 N. W. 481. The rule, as the cited cases show, is one of general application and applies to such instruments as contracts, promissory notes, bills of sale, deeds, leases, wills, and the like. See 17 C. J. S., Contracts, § 62b. Our decision in the Cravens case involved a signature in the body of a will.

Where the signature is at the end of the instrument, it is generally plain that it authenticates everything above it. Where, however, written or printed matter appears below the signature, or on the back of the instrument, or on separate sheets of paper, a signature authenticates only the matter intended by the parties to be included as a part of the instrument. The intention must be manifested either by express reference or by internal evidence in the writings involved from which an inference of such intention follows. It has been so held in numerous cases involving the sufficiency of contracts and memoranda under the statute of frauds. Quinn-Shepherdson Co. v. Triumph Farmers Elev. Co. 149 Minn. 24, 182 N. W. 710; Olson v. Sharpless, 53 Minn. 91, 55 N. W. 125; Annotation, 112 A. L. R. 937.

The authorities involving the application of the rule to insurance policies likewise hold that the position of the insurer's signature is not controlling, Delaware Ins. Co. v. Pennsylvania F. Ins. Co. 126 Ga. 380, 55 S. E. 330, 7 Ann. Cas. 1134; and that conditions and stipulations referred to in the body of the policy are part of the contract; but that where such matters are not referred to in the body of the policy they are no part thereof. Burbank v. Pioneer Mut. Ins. Assn. 60 Wash. 253, 110 P. 1005, 23 Ann. Cas. 762, and annotation; Murdock v. Chenango Co. Mut. Ins. Co. 2 N. Y. 210; Swinnerton v. Columbian Ins. Co. 37 N. Y. 174, 93 Am. D. 560; Roberts v. Chenango County Mut. Ins. Co. 3 Hill (N. Y.) 501; Timlin v. Equitable L. Assur. Society, 141 Wis. 276, 124 N. W. 253.

In determining whether the matters above and those not above the signature are parts of the insurance policy, both parts must be considered together. Here there is, as has been stated, no ex-

press reference in the printed matter above the signature to the printed policy provisions in question, but the latter contain express references to the former. The lack of an express reference above the signature must be supplied by internal evidence therein showing that the provisions above the signature refer to those not above it.

The "DECLARATIONS" are mere statements of fact constituting the basis for the contract of insurance. They are not the contract; nor are they intended to be such, and do not become a part of the contract unless made so by a provision in the policy to that effect. Schwartz v. Germania L. Ins. Co. 18 Minn. 404, 406 (448); Heiman v. Phoenix Mut. L. Ins. Co. 17 Minn. 127 (153), 10 Am. R. 154; see 3 Dunnell, Dig. & Supp. §§ 4663 to 4665; Employers' Liability Assur. Corp. Ltd. v. C. E. Carnes & Co. Inc. (D. C.) 24 F. Supp. 128. The last cited case involved an automobile liability policy. The absence of an insurance clause or any insurance contract provision above the signature shows that the "DECLARATIONS" are what the term signifies, viz., that they are mere statements of fact which the parties intended as the basis for a policy of insurance. We would not be warranted in construing the "DECLARATIONS" to be a contract of insurance; they are not such in law. The parties themselves have attached a label to them which clearly indicates that they are nothing more than what the law says they are, viz., statements of fact.

Being statements of fact upon which proposed insurance was to be based shows that they refer to such insurance. The statement in item 3 of the "DECLARATIONS" that the coverages for the classes therein mentioned shall be subject to all the terms "of this policy having reference thereto" definitely refers to a policy of insurance not found in the "DECLARATIONS" themselves. "This policy" is the printed matter containing the insurance policy provisions in question. The word "this" is a demonstrative word used to refer to a particular person or thing present in place or thought, "or to something just mentioned or to be mentioned." Webster's New International Dictionary (2 ed.) 1935. Cf. Baseler v. Worth Mut. F. Ins.

Co. 114 Pa. Super. 395, 174 A. 667; Stevens v. Haile (Tex. Civ. App.) 162 S. W. 1025. The only policy mentioned in the instrument is the one on the following pages. It is "this policy" within the meaning of the "DECLARATIONS." It contains the agreements and conditions for termination of the insurance for nonpayment of premiums. Under the circumstances, the words "this policy" refer to the policy printed on the pages following the signature.

Turning now to the so-called printed policy itself, we find therein express references to the "DECLARATIONS." The policy provisions unmistakably refer to the matter above the signature by providing that the insurance contract is one "with the insured, named in the declarations" (no insured is named on the pages on which the policy is printed) and by expressly making the "DECLARATIONS" a part of the contract. Furthermore, the terms of the printed policy definitely refer to the kinds of insurance mentioned in the "DECLARATIONS" and define the coverage with respect to each type of insurance.

By considering together the parts of the instrument above and those not above the signature, it is quite clear that they are mutually explanatory and complementary and that they constitute but a single instrument. See Timlin v. Equitable L. Assur. Society, 141 Wis. 276, 124 N. W. 253, where the rule was applied in a case where unsigned papers were attached to a policy.

Our conclusion is that the part above the insurer's signature refers to the policy provisions printed elsewhere on the instrument as the insurance contract and that, since the latter expressly refer to the former, it is clear that the signature authenticated both as the contract of insurance between the parties.

Indeed, if plaintiff's contention were sustained and in consequence thereof the printed policy provisions were held to be no part of the contract of insurance, it would be impossible to spell out any insurance coverage at all.

Plaintiff relies heavily on Sitterley v. Gray Co. Inc. 199 Minn. 475, 272 N. W. 387, as holding that printed matter not above the signature is no part of a contract; but in that case there was no

reference in the body of the contract, which was complete in itself, to the printed matter not above the signature. Here there is such reference. The case is not in point.

■ Where, as here, there is no statutory or contractual provision requiring the insurer to take some affirmative action declaring a forfeiture, the insurance automatically lapses and terminates for nonpayment of the premium under the policy provisions that the policy shall automatically lapse and terminate for nonpayment of the premium when due and that no notice of any kind shall be necessary to terminate or cancel the policy. Banholzer v. New York L. Ins. Co. 74 Minn. 387, 77 N. W. 295, 78 N. W. 244, 84 N. W. 1115 (writ of error dismissed, 178 U. S. 402, 20 S. Ct. 972, 44 L. ed. 1124) ; Continental Ins. Co. v. Stratton, 185 Ky. 523, 215 S. W. 416, 8 A. L. R. 391, and annotation at p. 395; 29 Am. Jur., Insurance, § 437. It makes no difference in this connection that the policy might have been reinstated after it lapsed and terminated by payment of the premium in full as provided in the policy. Where, as here, the insurance has automatically lapsed and terminated for nonpayment of the premium, and the policy provides that the insurance shall not be in force during any period of suspension or lapsation or the equivalent thereof and is subject to reinstatement upon payment of the premium, the insurance is inoperative from the time of such delinquency until it is reinstated in the manner provided in the policy. Hipp v. Fidelity Mut. L. Ins. Co. 128 Ga. 491, 57 S. E. 892, 12 L.R.A.(N.S.) 319. The fact that defendant mailed the insured a notice prior to the due date of the premium notifying him when it would be due and another notice after his default notifying him that the policy had lapsed and terminated for nonpayment of the premium is of no importance here, because the policy is explicit that no notice of any kind was required to terminate and cancel it upon the ground mentioned. In some cases where a custom of giving notices not required by the policy has been established, in consequence of which the insured is misled by failure of the insurer to give the notice, notice is required notwithstanding policy provisions that the policy shall automatically

lapse for nonpayment of premium. Ibs v. Hartford L. Ins. Co. 121 Minn. 310, 141 N. W. 289, 33 Ann. Cas. 1914C, 798 (reversed on other grounds, 237 U. S. 662, 35 S. Ct. 692, 59 L. ed. 1165, L. R. A. 1916A, 765) ; 32 C. J., Insurance, § 535. So far from claiming any custom of the kind mentioned, the insured by denying that he received the notices removed from the case the only possible basis for any such custom. Hence the insurance lapsed and terminated on July 9, 1940, for nonpayment of the premium, unless it was saved by the arrangement between defendant's agent, Cartwright, and the insured under which the latter was to pay the premium after his show at the Rochester fair.

■ When the arrangement was made by the insured and defendant's agent under which the former paid five dollars on account of the premium and agreed to pay the balance thereof if he had any decent kind of a show at the Rochester fair, it was not intended that the liability for the balance of the premium should be contingent on the insured's realizing sufficient money from the show to pay or that a credit unlimited as to time was extended. The intention of the parties is to be gathered from the circumstances. When the insurance was taken, the insured became indebted to the insurer for the premium. The liability for that debt was absolute, not contingent. When the reinstatement was made as plaintiff claims, the policy had lapsed and the insurance had terminated. Where the parties intend that a debt should be paid out of the net proceeds of an undertaking, as in Worden v. Dodge, 4 Denio (N. Y.) 159, 47 Am. D. 247, or that it should be paid upon the happening of a specified event, as, for example, when the promisor is able, the liability is contingent. 12 Am. Jur., Contracts, § 303. It is plain from the terms of the policy that it could be reinstated only upon payment of the premium in full and with the consent of the insurer's attorney. That required payment to discharge an absolute, not a contingent, liability previously incurred. The intention of the parties was "to revive and reinstate the original contract of insurance as it existed before its lapse," modified only by the arrangements under which the reinstatement was made. Geare v.

United States L. Ins. Co. 66 Minn. 91, 68 N. W. 731. Where there is a reinstatement, "the original contract is the contract for insurance." Robbins v. New York L. Ins. Co. 195 Minn. 205, 209, 262 N. W. 210, 212, 872. In New York L. Ins. Co. v. Buchberg, 249 Mich. 317, 321, 228 N. W. 770, 771, 67 A. L. R. 1483, 1486, the court said:

"* * * The reinstatement of a policy is not a new contract of insurance, nor is it the issuance of a policy of insurance; but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse."

There is a conflict among the authorities, but our holdings are settled in accord with the weight of authority, which is to the effect that a reinstatement is not the making of a new contract of insurance, but the cancelling of a forfeiture, "whereupon the policy is restored and recognized as binding by the insurer." 29 Am. Jur., Insurance, § 267. Accord: 4 Cooley, Briefs on Insurance (2 ed.) and 8 *Id.* Supp. p. 3800, (f). There is a dictum to the contrary in Ward v. Merchants L. & C. Co. 139 Minn. 262, 166 N. W. 221, which is adequately explained and limited in Jennings v. Travelers Equitable Ins. Co. 173 Minn. 547, 218 N. W. 104, in accordance with the views herein expressed. The reinstatement revived the old contract of insurance and the old debt for the premium.

It is true, perhaps, that the parties assumed that the insured would realize sufficient from his show at the Rochester fair to enable him to pay the balance of the premium. They did not take into consideration the fact that the insured might fail to realize enough from his show to carry out the arrangement; but it was not intended that such a failure should relieve him of liability or indefinitely extend the time to pay. The case is governed by the rule that, where a debt is due and the parties agree that it shall be paid upon the happening of a future event merely as a convenient time of payment, and the future event does not occur as contemplated, the law implies a promise to pay within a reasonable time.

Nunez v. Dautel, 86 U. S. (Wall.) 560, 22 L. ed. 161; Crooker v. Holmes, 65 Me. 195, 20 Am. R. 687; Ubsdell & Pierson v. Cunningham, 22 Mo. 124; Capron v. Capron, 44 Vt. 410; 12 Am. Jur., Contracts, § 301; Restatement, Contracts, § 301. A reasonable time is to be determined in the light of all the facts in the case. The policy itself furnishes a measure of what the parties deemed the maximum period of time allowable for the payment of the premium, *viz.*, two calendar months. The policy provides for automatic termination of the insurance if the premium is not paid within such time. A reasonable time is to be determined in the light of that provision which by the reinstatement of the policy, except as modified thereby, was adopted as one of the terms of the insurance contract. Since the parties themselves by the policy adopted two calendar months as the maximum time within which to pay the entire premium, a reasonable time for payment of the balance of the premium under the circumstances does not exceed a like measure of time. See Kassler v. Aetna L. Ins. Co. 180 Minn. 346, 350, 230 N. W. 790. The two months expired in October 1940. The accident causing the death occurred the following January, eight months after the policy was issued, five months after the show at the Rochester fair, and three months after a reasonable time thereafter had elapsed for payment of the balance of the premium. At that time the insurance was not in force because it had lapsed and terminated for nonpayment of the balance of the premium.

Our conclusion is that the directed verdict was proper.

Affirmed.

Mr. Justice Loring and Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.