### COPPINGER et al. v. REPUBLIC NATURAL GAS CO.

No. 3661.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1948.

Rehearing Denied Dec. 23, 1948.

A. D. Weiskrich, of Wichita, Kan. (Collins, Weiskrich & Williams, George B. Collins, C. L. Williams and Oliver H. Hughes, all of Wichita Kan., on the brief) for appellant.

John F. Eberhardt and George Siefkin, both of Wichita, Kan. (Foulston, Siefkin, Schoeppel, Bartlett & Powers, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Coppinger and Southern,[1] a copartnership, brought this action against Republic Natural Gas Company,[2] a corporation, to recover damages for the alleged breach of a contract for the drilling of 20 natural gas wells in the Hugoton Gas Field, Stevens County, Kansas. At the trial, the jury returned a verdict in favor of the partnership. The trial court sustained a motion for judgment notwithstanding the verdict, and entered judgment for Republic.

The base contract was entered into October 26, 1945. It provides that if the work to be done thereunder "shall not be fully satisfactory to Republic, Republic shall have the right at its option to cancel and terminate this contract insofar as it applies to any well not then already drilled or drilling, by giving notice to such effect to Contractor * * *." The base contract provided that each well to be drilled thereunder should be covered by a drilling contract in substantially the form attached to the base contract. Between November 20, 1945, and January 5, 1946, nine drilling contracts were entered into, each covering the drilling of a specific well.

C. A. Hardy was Republic's field superintendent in the Hugoton Gas Field. The base contract was entered into upon his recommendation. In disposing of the motion, the trial judge filed a written opinion, brought on the record here, in which he stated, in substance, that the undisputed evidence established that Mr. Huoy and Mr. Howard, vice-presidents of Republic, the latter being a graduate engineer and an experienced driller, conducted an investigation in the field; that they learned the time required by the partnership for completing a well was approximately 12 days longer than that required by other drilling contractors in the field; that Hardy had accepted gifts and entertainment from the partnership and had been guilty of favoritism to the partnership; that the partnership had encountered difficulties in the drilling of the three wells, one of them covered by the base contract; and that the results of the investigation were reported to Mr. Wildes, president of Republic, and that shortly thereafter, on January 15, 1946, Republic discharged Hardy and notified the partnership in writing that operations under the contract had not been "fully satisfactory to Republic," and that Republic elected to cancel the contract as to any well not drilled or drilling.

Since the partnership has brought on the record only the evidence introduced in its behalf, we must accept as correct the statement of the trial court respecting the facts established by Republic's evidence. Indeed, there is respectable authority holding that a ruling on a motion for a directed verdict, or other like motion, is not reviewable unless the record contains all or substantially all the evidence on which the ruling is based.[3]

And it is well settled that it is the duty of the trial court to direct a verdict at the close of all the evidence, where the evidence, although conflicting, is of so conclusive a character that the court, in the exercise of sound judicial discretion, ought to set aside a verdict in opposition to it.[4]

The evidence introduced in behalf of the partnership tended to establish these facts: The partnership completed the nine wells covered by drilling contracts and they were accepted by Republic. Except as hereafter

[1] Hereinafter called the partnership.

[2] Hereinafter called Republic.

[3] Board of Com'rs of Lake County v. Sutliff, 8 Cir., 97 F. 270, 275; Taylor Craig Corp. v. Hage, 8 Cir., 69 F. 581; 4 C. J. S., Appeal and Error, § 1172, page 1677.

[4] Farr Co. v. Union Pacific R. Co., 10 Cir., 106 F.2d 437, 439; New Amsterdam Casualty Co. v. Farmers' Co-op. Union, 8 Cir., 2 F.2d 214, 215; Hartl v. Chicago, M. St. P. & P. R. Co., 7 Cir., 73 F.2d 875; Dernberger v. Baltimore & O. R. Co., 4 Cir., 243 F. 21, 24.

indicated, the drilling of those wells was carried on in a workmanlike manner.

The wells were drilled with a rotary drill to a certain depth and then were completed with cable tools. There was considerable delay in certain wells between the completion of the rotary drilling and the starting of the cable tool drilling. Southern testified: "We were behind with our wells just about all the time with the cable tools." A drilling contract for King Well No. 1 was entered into December 7, 1945. It was spudded in on December 13, 1945. On January 6, 1946, while the partnership was attempting to complete such well with cable tools, a pin jumped between the bit and the stem. The driller in charge continued to pound with the rope socket on top of the stem until the tools were fast in the hole. The following morning Southern discovered the trouble. The partnership had to remove the cable and employ a rotary rig to rotate the pipe in order to fish out the tools. The well was completed on February 10, 1946.

A prior contract had been entered into between Republic and the partnership for the drilling of ten wells. That contract had not been completed when the contract involved in the instant case was executed. Under the earlier contract, the partnership commenced the drilling of the Martin Gray Well No. 1 on November 8, 1945. The partnership encountered difficulty in drilling that well and lost the tools and had a fishing job. The partnership also had difficulty in the drilling of the third well and it was necessary for Republic to provide a special liner in order to complete the well.

After the partnership received the notice of cancellation, Coppinger took the matter up with Mr. Wildes, president, and Mr. Howard, vice-president, of Republic, and asked them to state the reason for Republic's dissatisfaction. Both officers told Coppinger that Republic did not have to state a reason for its dissatisfaction, but Wildes told Coppinger that Republic was dissatisfied with the relationship between the partnership and Hardy and inquired with respect to the gifts that the partnership had made to Hardy. Coppinger admitted that the partnership had given Hardy a suit of clothes and some whisky and the usual presents that contractors give to superintendents and had entertained Hardy when he was in the Hugoton area. Both Wildes and Howard also told Coppinger that the work under the contract was unsatisfactory.

After the contract was canceled, Republic entered into a contract with the Moran Drilling Company for the drilling of the remainder of the wells. There was no proof that Republic derived any financial advantage under the new contract.

■ The local law of Kansas controls with respect to the legal issues here presented.[5]

■ Parties to a contract may lawfully stipulate that performance by one of them shall be fully satisfactory to the other.[6]

■ Under such a contract, the party to be satisfied is the judge of his own satisfaction, subject to the limitation that he must act in good faith.[7]

■ Here, the burden was upon the partnership to establish by evidence that Republic's assertion of dissatisfaction was not made in good faith or was arbitrary or capricious, or was merely feigned dissatisfaction.[8] To merely show that Republic should have been satisfied was not enough.[9]

■ We agree with the conclusion of the trial court that the evidence adduced

[5] Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

[6] Hollingsworth v. Colthurst, 78 Kan. 455, 96 P. 851, 18 L.R.A.,N.S., 741, 130 Am.St.Rep. 382.

[7] Hodges v. D. M. Ferry & Co., 92 Kan. 21, 140 P. 102; Gould v. Stewart, 111 Kan. 41, 206 P. 309, 311; Hollingsworth v. Colthurst, 78 Kan. 455, 96 P. 851, 18 L.R.A., N.S., 741, 130 Am.St. Rep. 382.

[8] Union Gas & Fuel Corp. v. Teton Syndicate, 119 Kan. 236, 237 P. 908, 909; Hodges v. D. M. Ferry & Co., 92 Kan. 21, 140 P. 102; Vandenberg v. Board of Education of Wichita, 117 Kan. 48, 230 P. 321, 323.

[9] Hollingsworth v. Colthurst, 78 Kan. 455, 96 P. 851, 18 L.R.A.,N.S., 741, 130 Am.St.Rep. 382; Union Gas & Fuel Corp. v. Teton Syndicate, 119 Kan. 236, 237 P. 908, 909.

by the partnership was insufficient to support a finding that, in asserting its dissatisfaction, Republic acted in bad faith or arbitrarily or capriciously. On the contrary, the undisputed evidence established a reasonable basis for dissatisfaction. It established that the partnership was constantly behind with its cable tool work resulting in substantial delays between the completion of the rotary drilling and the commencement of cable tool drilling; that it took the partnership a substantially longer period than other drilling contractors to complete a well; that there was carelessness in the drilling of the King Well resulting in substantial delay; and that there were improper relations between the partnership and Hardy.

The judgment is affirmed.

MURRAH, Circuit Judge (dissenting).

The jury was told in effect that if the cancellation was arbitrary, capricious, or based upon a mere pretended dissatisfaction, and not in good faith, they could find for the plaintiff. Guided by this instruction, about which there is no dispute, the jury found from the evidence that appellee, arbitrarily and in bad faith, cancelled the contract, to the damage of the appellant. Of course if there is any substantial evidence to support the jury's verdict, the trial court was not authorized to substitute its judgment for that of the jury. Like questions of intent and purpose, we cannot unlock the minds of Republic's officials to determine just what motives prompted them to act as they did. The inquiry is necessarily objective, to be judged by what the parties said and did.

When the contract was cancelled, appellant had drilled and completed nine of the twenty wells covered by the contract. They had been accepted by the appellee without complaint or criticism. True, a fishing job in one well caused delay in its completion, but it was completed and accepted by the Company. There was evidence to the effect that the wells were drilled under the supervision of appellee's representatives, and that each well was drilled and completed in accordance with their instructions.

When appellee's President inquired of Coppinger if he had given their Superintendent anything, he replied that he had given him the "usual presents that contractors give their superintendents"; that he had given him "a suit of clothes and some whisky" and "entertained him when he came to town." Whereupon Republic's President replied, "unfortunately, we cannot pin anything on you, but we have on Mr. Hardy [the Company's Superintendent] with other people * * * but we are going to make the innocent suffer with the guilty." There was some evidence tending to show that the Company was behind with its "cable tool work", but when the contract was cancelled without notice, and the appellee was asked to give a reason, it refused, stating that it did not have to give one. It would seem in these circumstances that the jury was justified in the inference that it had no good reason, and that it therefore acted in bad faith.

The opinion of the court refers to facts recited in the opinion of the trial court, and upon which apparently both the trial court and this court rely in support of the legal conclusion that there was no evidence of bad faith. Conceding that the factual recitations in the trial court's opinion may be taken as true in the absence of refutation in the record, nevertheless if the partnership's evidence made out a prima facie case, it was entitled to go to the jury on the crucial question of bad faith, regardless of the weight of the evidence on the other side.

If I read the law of this case aright, the Company was not only the judge of its own satisfaction, but of its own good faith as well. This being so, the contract between the parties is nothing more than a mere scrap of paper and a nullity. In my judgment, it was for the jury to determine whether, under all of the facts, the appellee exercised good faith in the cancellation of the contract. It resolved that issue in favor of appellant, and it should stand.